477 So.2d 544 (1985)
Clifton WINFIELD, Nigel Winfield, Nikki Winfield, a Minor, by and through Her Father and Next Friend Malcolm Winfield and Frank Marano, Petitioners,
v.
DIVISION OF PARI-MUTUEL WAGERING, DEPARTMENT OF BUSINESS REGULATION, Robert M. Smith, Jr., and Gary Rutledge, Respondents.
No. 64793.
Supreme Court of Florida.
October 10, 1985.
*545 Milton E. Grusmark of the Law Offices of Milton E. Grusmark, North Miami, for petitioners.
Elliot H. Henslovitz, Miami, for respondents.
Jim Smith, Atty. Gen., David K. Miller, Chief Counsel and John Miller, Asst. Atty. Gen., Dept. of Legal Affairs, Economic Crime Litigation Unit, Tallahassee, for Atty. Gen., amicus curiae.
ADKINS, Justice.
This cause is before us for review of two questions certified by the Fourth District Court of Appeal to be of great public importance. Division of Pari-Mutuel Wagering, *546 Department of Business Regulation v. Winfield, 443 So.2d 455 (Fla. 4th DCA 1984). We have jurisdiction. Art. V, § 3(b)(4), Fla. Const.
The Department of Business Regulation and the Division of Pari-Mutuel Wagering, respondents, issued subpoenas duces tecum to various banking institutions to obtain banking records of the accounts of Nigel Winfield and Malcolm Winfield, petitioners. Respondents gave no notice of the subpoenas to petitioners and asked the banks not to inform petitioners of the investigation.
Petitioners filed for declaratory and injunctive relief against the subpoenas duces tecum alleging that the subpoenas were facially invalid, that they violated petitioners' constitutional right to privacy and due process, and that maintenance of the records as public records in the respondent's files constituted an additional violation of their constitutional right to privacy. The circuit court found that respondents had probable cause to institute the investigation, and that it had acted within its authority. The court nevertheless granted petitioners relief on the grounds that their constitutional privacy rights would be violated if the subpoenaed records became public records in the hands of respondents pursuant to chapter 119, Florida Statutes. The court thereupon confirmed a previous interlocutory order in effect restraining respondents from inspecting, copying or using the records or the information contained in them, and directing that the records be maintained under court seal. Appeal was taken to the district court which ruled in favor of respondents and certified the following questions to this Court as being of great public importance:
I. Does article I, section 23 of the Florida Constitution prevent the Division of Pari-Mutuel Wagering from subpoenaing a Florida citizen's bank records without notice?
II. Does the subpoenaing of all of a citizen's bank records under the facts of this case constitute an impermissible and unbridled exercise of legislative power?
443 So.2d at 457. We answer both questions in the negative and approve the decision of the district court.
The concept of privacy or right to be let alone is deeply rooted in our heritage and is founded upon historical notions and federal constitutional expressions of ordered liberty. Justice Brandeis, sometimes called the father of the idea of privacy, recognized this fundamental right of privacy when he wrote:
The makers of our Constitution undertook to secure conditions favorable to the pursuit of happiness. They recognized the significance of man's spiritual nature, of his feelings and of his intellect... . They sought to protect Americans in their beliefs, their thoughts, their emotions and their sensations. They conferred, as against the Government, the right to be let alone  the most comprehensive of rights and the right most valued by civilized men.
Olmstead v. United States, 277 U.S. 438, 478, 48 S.Ct. 564, 572, 72 L.Ed. 944 (1928) (Brandeis, J., dissenting).
The United States Supreme Court has fashioned a right of privacy which protects the decision-making or autonomy zone of privacy interests of the individual. The Court's decisions include matters concerning marriage, procreation, contraception, family relationships and child rearing, and education. Roe v. Wade, 410 U.S. 113, 152-53, 93 S.Ct. 705, 726-27, 35 L.Ed.2d 147 (1973). Other privacy interests enunciated by the Court in Nixon v. Administrator of General Services, 433 U.S. 425, 97 S.Ct. 277, 53 L.Ed.2d 867 (1977), and Whalen v. Roe, 429 U.S. 589, 97 S.Ct. 869, 51 L.Ed.2d 64 (1976), involve one's interest in avoiding the public disclosure of personal matters. However, Nixon, Whalen, and those cases involving the autonomy zone of privacy are not directly applicable to the case at bar.
Likewise, the decision of the Third District Court of Appeal in Milohnich v. First National Bank, 224 So.2d 759 (Fla. 3d DCA 1969), does not apply to the case before us. In that case, the court held that *547 the complaint was sufficient to state a cause of action for breach by a bank of an implied contractual duty to its depositor by negligently, intentionally, willfully or maliciously disclosing information concerning a depositor's accounts to a private third party. Id. at 762. In Milohnich, the court clearly stated that it was dealing with the bank's liability only and not with disclosures required by the government or under compulsion of law. Id.
In formulating privacy interests, the Supreme Court has given much of the responsibility to the individual states. Katz v. United States, 389 U.S. 347, 350-51, 88 S.Ct. 507, 511, 19 L.Ed.2d 576 (1967). Thus, on November 4, 1980, the voters of Florida approved article I, section 23, thereby adding a new privacy provision to the Florida Constitution. Article I, section 23 provides:
Right of privacy.  Every natural person has the right to be let alone and free from governmental intrusion into his private life except as otherwise provided herein. This section shall not be construed to limit the public's right of access to public records and meetings as provided by law.
Heretofore, we have not enunciated the appropriate standard of review in assessing a claim of unconstitutional governmental intrusion into one's privacy rights under article I, section 23. Since the privacy section as adopted contains no textual standard of review, it is important for us to identify an explicit standard to be applied in order to give proper force and effect to the amendment. The right of privacy is a fundamental right which we believe demands the compelling state interest standard. This test shifts the burden of proof to the state to justify an intrusion on privacy. The burden can be met by demonstrating that the challenged regulation serves a compelling state interest and accomplishes its goal through the use of the least intrusive means. See Roe v. Wade, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973); In re Estate of Greenberg, 390 So.2d 40 (Fla. 1980).
Although we choose a strong standard to review a claim under article I, section 23, "this constitutional provision was not intended to provide an absolute guarantee against all governmental intrusion into the private life of an individual." Florida Board of Bar Examiners Re: Applicant, 443 So.2d 71, 74 (Fla. 1983). The right of privacy does not confer a complete immunity from governmental regulation and will yield to compelling governmental interests.
However, before the right of privacy is attached and the delineated standard applied, a reasonable expectation of privacy must exist. Thus, implicit within the question of whether article I, section 23 of the Florida Constitution prevents the Division of Pari-Mutuel Wagering from subpoenaing a Florida citizen's bank records without notice, is the threshold question of whether the law recognizes an individual's legitimate expectation of privacy in financial institution records.
The United States Supreme Court addressed the threshold question in United States v. Miller, 425 U.S. 435, 96 S.Ct. 1619, 48 L.Ed.2d 71 (1976), where it held that bank records, subpoenaed by the government without notice to a depositor under investigation, did not fall within a protected zone of privacy and were not "private papers" protected by the Fourth Amendment. Id. at 440, 96 S.Ct. at 1622-23. In reaching its conclusion, the Court further noted that there is no legitimate "expectation of privacy" in the contents of original checks and deposit slips in the possession of a bank. Id. at 442, 96 S.Ct. at 1623-24. However, as previously noted, the United States Supreme Court has also made it absolutely clear that the states, not the federal government, are responsible for the protection of personal privacy: "the protection of a person's general right to privacy  his right to be let alone by other people  is, like the protection of his property and of his very life, left largely to the law of the individual States." Katz v. United States, 389 U.S. 347, 350-51, 88 S.Ct. 507, 511, 19 L.Ed.2d 576 (1967). This *548 Court accepted that responsibility of protecting the privacy interests of Florida citizens when we stated that "the citizens of Florida, through their state constitution, may provide themselves with more protection from governmental intrusion than that afforded by the United States Constitution." State v. Sarmiento, 397 So.2d 643, 645 (1981).
The citizens of Florida opted for more protection from governmental intrusion when they approved article I, section 23, of the Florida Constitution. This amendment is an independent, freestanding constitutional provision which declares the fundamental right to privacy. Article I, section 23, was intentionally phrased in strong terms. The drafters of the amendment rejected the use of the words "unreasonable" or "unwarranted" before the phrase "governmental intrusion" in order to make the privacy right as strong as possible. Since the people of this state exercised their prerogative and enacted an amendment to the Florida Constitution which expressly and succinctly provides for a strong right of privacy not found in the United States Constitution, it can only be concluded that the right is much broader in scope than that of the Federal Constitution.
This is a case of first impression in the state of Florida; therefore, it is within the discretion of this Court to decide the limitations and latitude afforded article I, section 23. We believe that the amendment should be interpreted in accordance with the intent of its drafters. Thus, we find that the law in the state of Florida recognizes an individual's legitimate expectation of privacy in financial institution records. However, we further find that the state's interest in conducting effective investigations in the pari-mutuel industry is a compelling state interest and that the least intrusive means was employed to achieve that interest. We also note that predisclosure notification by a bank to its customers should not be and is not mandated by article I, section 23. Thus, we hold that article I, section 23, of the Florida Constitution does not prevent the Division of Pari-Mutuel wagering from subpoenaing a Florida citizen's bank records without notice.
Concerning the second certified question, we believe that the information sought by the government was essential to its inquiry. To ensure that it has all of the information necessary for a complete investigation, the agency rather than the bank or depositor must calculate what is and what is not relevant. The subpoenas in question were reasonably calculated to obtain information relevant to a state investigation. There is nothing in the record to support a contrary finding. Thus, we hold that the subpoenaing of all of a citizen's bank records under the facts of this case does not constitute an impermissible and unbridled exercise of legislative power.
It is so ordered.
BOYD, C.J., and OVERTON, EHRLICH and SHAW, JJ., concur.
McDONALD, J., concurs in result only.