688 So.2d 350 (1997)
STATE of Florida, Appellant,
v.
Marianne CONFORTI and Kathleen Urbano, Appellees.
Nos. 95-0299, 95-1299.
District Court of Appeal of Florida, Fourth District.
January 8, 1997.
Rehearing, Rehearing, and Certification of Questions Denied February 11, 1997.
*352 Robert A. Butterworth, Attorney General, Tallahassee, John Tiedemann, Assistant Attorney General, West Palm Beach; Michael Satz, State Attorney, and J. Scott Raft, Assistant State Attorney, Fort Lauderdale, for appellant.
Daniel R. Aaronson of Benjamin & Aaronson, P.A., Fort Lauderdale, for appellees.
Rehearing, Rehearing En Banc, and Certification of Questions Denied February 11, 1997.
GROSS, Judge.
The State appeals from a county court order dismissing lewdness charges against appellees on the basis that section 796.07(1)(b), Florida Statutes (1991), which defines "lewdness" as "any indecent or obscene act," is unconstitutional under various provisions of the state and federal constitutions. *353 We have jurisdiction pursuant to section 26.012(1), Florida Statutes (1995).[1]State v. Block, 428 So.2d 782, 783 (Fla. 4th DCA 1983); Fla.R.App.P. 9.030(b)(1)(A).[2]
Studio XXX is a business open to the public, age 18 and older. For a customer to go beyond the front desk, Studio XXX requires payment for a specific entertainment package. On May 27, 1993, an undercover police officer entered Studio XXX and paid $80.00 for a "two female entertainment package." The officer was escorted to a private room. He went in and the door was closed behind him. Two women, appellees Conforti and Urbano, entered the room from behind a partition. One of them told the officer to leave a tip and "get comfortable." He placed $120.00 on a table and stripped to his underwear. Appellees danced erotically to music for approximately thirty minutes. For five minutes during the performance, the dancers masturbated and performed cunnilingus on each other. The sex acts were performed rhythmically, in conjunction with the music, as part of the performance. The dancers contended that they attempted to communicate the message of eroticism. The officer testified that he, in fact, received the message.
Both women were arrested and charged with engaging in lewd acts in violation of section 796.07(3), Florida Statutes (1991).[3] Chapter 796 is entitled "Prostitution." Section 796.07(3)(a), Florida Statutes (1991), provides that it is unlawful "[t]o offer to commit, or to commit, or to engage in, prostitution, lewdness, or assignation." "Lewdness" is defined by section 796.07(1)(b) as "any indecent or obscene act."
On the facts set forth above, and pursuant to motions filed by appellees, the court entered two identical orders declaring section 796.07(1)(b) to be unconstitutional and dismissing the charges against both appellees. The cases were consolidated on appeal.

I. FIRST AMENDMENT

On First Amendment grounds, the trial court based its ruling on Miller v. California, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973), and Barnes v. Glen Theatre, Inc., 501 U.S. 560, 111 S.Ct. 2456, 115 L.Ed.2d 504 (1991). The court reasoned that section 796.07(1)(b) was unconstitutional as applied to the facts of this case because the offensive sexual conduct was part of a nude dance, which under Barnes is expressive conduct protected by the First Amendment. Applying Miller, the court held the statute to be unconstitutional on its face, since its definition of lewdness did "not contemplate or allow for" a situation where an obscene act was only a small part of a larger performance or mode of expression. The trial court interpreted Miller to hold that "there can no longer be an obscene act when that act is not standing alone," but is only a small part of "a larger performance or mode of expression."
Because the lewd conduct at issue in this case is not protected by the First Amendment, we reverse this portion of the trial court's order.
The Supreme Court has extended the First Amendment protection of speech beyond verbal communications to include expressive conduct. Spence v. Washington, 418 U.S. 405, 410-11, 94 S.Ct. 2727, 2730, 41 L.Ed.2d 842 (1974). If a statute restricts activity which can be characterized as expressive conduct, then the Court has evolved two distinct approaches for resolving First Amendment claims. Laurence H. Tribe, American Constitutional Law § 12-2, at 789-94 (2d ed.1988). First, where a statute *354 regulates conduct because of the message expressed, the law is deemed "content-based" and is subject to strict judicial scrutiny. James H. Taylor, Comment, Constitutional Law: Nude Dancing's Marginal Status Under the First Amendment, 44 Fla. L.Rev. 141, 142 (1992). This means that a court will strike down the regulation as unconstitutional unless the
government shows that the message being suppressed poses a "clear and present danger," constitutes a defamatory falsehood, or otherwise falls on the unprotected side of one of the lines the Court has drawn to distinguish those expressive acts privileged by the First Amendment from those open to government regulation with only minimal due process scrutiny.
Tribe, supra, § 12-2, at 791-92. If a statute does not restrict conduct because of the message it expresses, if it is aimed at the "noncommunicative impact of an act," then the law is "content neutral." Id. at 792; Taylor, supra, at 142. A content-neutral statute is "constitutional, even as applied to expressive conduct, so long as it does not unduly constrict the flow of information and ideas." Tribe, supra, § 12-2 at 792. To determine the constitutionality of a content-neutral statute, a court must weigh, on a case by case basis, the value of freedom of expression against the government's interest in regulating the conduct at issue. The Supreme Court formulated the test to analyze content-neutral regulations in United States v. O'Brien, 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968). Under the O'Brien test a regulation restricting expressive conduct withstands First Amendment scrutiny if 1) it is within the constitutional power of the government; 2) it furthers an important or substantial government interest; 3) the governmental interest is unrelated to the suppression of free expression; and 4) the incidental restriction on expressive conduct is no greater than is necessary to further the governmental interest. Id. at 377, 88 S.Ct. at 1679.
In Barnes, the issue before the court was whether Indiana's public indecency statute, which required that dancers wear "pasties" and "G-strings," impermissibly infringed upon the First Amendment rights of both businesses which sought to present, and dancers who desired to perform, totally nude dancing as entertainment. Writing for a plurality of the court, Chief Justice Rehnquist first focused on whether nude dancing was expressive conduct, the finding that would trigger First Amendment analysis. Acknowledging dicta in previous cases, the plurality concluded
that nude dancing of the kind sought to be performed here is expressive conduct within the outer perimeters of the First Amendment, though we view it as only marginally so.
Barnes, 501 U.S. at 566, 111 S.Ct. at 2460. This placement of nude dancing at the outer limits of expressive conduct was consistent with prior decisions of the Court. For example, O'Brien observed that a "limitless variety of conduct" could not be labeled "speech" merely because the "person engaging in the conduct intends thereby to express an idea." 391 U.S. at 376, 88 S.Ct. at 1678. In California v. LaRue, 409 U.S. 109, 118, 93 S.Ct. 390, 397, 34 L.Ed.2d 342 (1972), the Court upheld regulations prohibiting sexually explicit live entertainment in part because the regulations were aimed at performances that partook "more of gross sexuality than of communication."
Although Chief Justice Rehnquist wrote for a plurality of the Court, it appears that a majority concurred in the characterization of nude dancing as being at least at the "outer perimeters" of First Amendment protection. Justice Scalia concluded that the Indiana statute was directed not at expression but at nudity, a type of conduct within a state's power to regulate. Under Justice Scalia's First Amendment analysis, the crucial question is whether the purpose of a statute is related to the suppression of expression; where there is no content based motive, a court must sustain a statute on the showing of a rational basis for the regulation. Barnes, 501 U.S. at 572-81, 111 S.Ct. at 2463-68. Justice Souter's concurrence noted that nude dancing was "subject to a degree of First Amendment protection." Id. at 581, 111 S.Ct. at 2468. Even the dissent framed the issue as whether "nonobscene nude dancing *355 performed as entertainment is expressive conduct." Id. at 587, 111 S.Ct. at 2471. Thus, all the members of the Barnes court acknowledged that there is some point where protected expression ends and regulable conduct begins.
If the simple nude dancing described in Barnes was only "marginally" within the "outer perimeters of the First Amendment," then the acts of cunnilingus and masturbation here at issue are somewhere on Mars. Appellees were not arrested for mere nude dancing. The sex acts prosecuted here cunnilingus and masturbation rhythmically performed to music before a paying customer in a dark, private roomdo not amount to expressive conduct protected by the First Amendment. The performance of the sex acts to music and appellees' intention to convey a message of eroticism do not envelop them with constitutional protection. In Arcara v. Cloud Books, Inc., 478 U.S. 697, 705, 106 S.Ct. 3172, 3176, 92 L.Ed.2d 568 (1986), the Supreme Court observed that it was a fallacy to seek
to use the First Amendment as a cloak for obviously unlawful public sexual conduct by the diaphanous device of attributing protected expressive attributes to that conduct. First Amendment values may not be invoked by merely linking the words "sex" and "books."
Because the sex acts in this case are not protected expressive conduct, it is unnecessary to use the O'Brien test to decide whether the statute is constitutional as applied, because restrictions on these activities are not subject to First Amendment scrutiny.
The second district has refused to extend First Amendment protection when a performance is beyond the realm of simple nude dancing. In Hoskins v. Department of Business Regulation, Div. of Alcoholic Beverages and Tobacco, 592 So.2d 1145 (Fla. 2d DCA), rev. denied, 601 So.2d 552 (Fla.1992), decided the year following Barnes, the court affirmed the revocation of an alcoholic beverage license for violation of section 796.07(2)(a), Florida Statutes (1989), which proscribed operating a building for the purpose of lewdness. The court rejected the argument that "lap dancing," which included simulated sexual activity, was a protected form of free speech. Id. at 1146; see also State v. Waller, 621 So.2d 499, 502 (Fla. 2d DCA 1993). Other states have also refused to characterize dances less explicit than those performed in this case as expressive conduct:
While some may find that lap dancing, like nude dancing, is a form of expressive conduct protected by the First Amendment, this court declines to stretch the circle of expression beyond the perimeters already established.
State Ex Rel. Miller v. Private Dancer, 83 Ohio App.3d 27, 613 N.E.2d 1066, 1069 (1992); see People v. Better, 33 Ill.App.3d 58, 337 N.E.2d 272, 277 (1975).
Our holding that the sexual conduct here is unprotected by the First Amendment also compels the conclusion that Miller v. California is inapplicable to this case. The defendant in Miller conducted a mass mailing of brochures containing pictures of people engaging in sexual activity "to advertise the sale of illustrated books, euphemistically called `adult' material." 413 U.S. at 16, 18, 93 S.Ct. at 2611-12. The statute under which Miller was convicted proscribed the sale or distribution of "any obscene matter." Id. at 18 n. 1, 93 S.Ct. at 2611 n. 1. The statute defined "matter" as "any book, magazine, newspaper, or other printed or written material or any picture, drawing, photograph, motion picture, or other pictorial representation...." Id. The court acknowledged "that obscene material is unprotected by the First Amendment," id. at 23, 93 S.Ct. at 2614; see also Roth v. United States, 354 U.S. 476, 485, 77 S.Ct. 1304, 1309, 1 L.Ed.2d 1498 (1957), and proceeded to set forth a test to define "obscene material." The Miller test for obscene material is (a) whether the average person applying contemporary community standards would find that the work, taken as a whole, appeals to the prurient interest; (b) whether the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law; and (c) whether the work, taken as a whole, lacks serious literary, artistic, political, or scientific value. 413 U.S. at 24, 93 S.Ct. at 2615. The court concluded that "[i]f a state law that regulates obscene material is *356 thus limited, as written or construed, the First Amendment values applicable to the States through the Fourteenth Amendment are adequately protected by the ultimate power of appellate courts to conduct an independent review of constitutional claims when necessary." Id. at 25, 93 S.Ct. at 2615 (emphasis supplied).
Section 796.07 regulates conduct, not the expressive material at issue in Miller. The Miller obscenity test applies only to expression protected by the First Amendment. See Waller, 621 So.2d at 502. Miller involved a statute designed to regulate distribution of obscene "materials" that depicted or described sexual conduct by words, pictures or drawings. The Miller court recognized the limits of its decision in footnote 8:
Although we are not presented here with the problem of regulating lewd public conduct itself, the States have greater power to regulate nonverbal, physical conduct than to suppress depictions or descriptions of the same behavior.
413 U.S. at 26 n. 8, 93 S.Ct. at 2616 n. 8. Section 796.07 does not attempt to regulate depiction of sexual conduct in material protected by the First Amendment; rather it regulates the actual physical sexual conduct itself. The First Amendment does not require, as the trial court held, that nonexpressive conduct such as masturbation and cunnilingus be analyzed in the context of a larger performance; if it is nonexpressive conduct, an act may be viewed in isolation to determine if it is indecent or obscene in violation of the statute. As the Supreme Court observed in Paris Adult Theatre I v. Slaton, 413 U.S. 49, 67, 93 S.Ct. 2628, 2640, 37 L.Ed.2d 446 (1973):
Conduct or depictions of conduct that the state police power can prohibit on a public street do not become automatically protected by the Constitution merely because the conduct is moved to a bar or a `live' theater stage, any more than a `live' performance of a man and a woman locked in a sexual embrace at high noon in Times Square is protected by the Constitution because they simultaneously engage in a valid political dialogue.
For these reasons, the trial court incorrectly applied the Miller test in this case, and section 796.07(1)(b) is constitutional on its face. Because we have found that appellees' sexual conduct had no First Amendment significance, we also reverse that part of the trial court's order finding an improper prior restraint. See, e.g., Fort Wayne Books, Inc. v. Indiana, 489 U.S. 46, 109 S.Ct. 916, 103 L.Ed.2d 34 (1989); Marcus v. Search Warrants, 367 U.S. 717, 81 S.Ct. 1708, 6 L.Ed.2d 1127 (1961); Arcara, 478 U.S. at 705, 106 S.Ct. at 3176.

II. VOID FOR VAGUENESS DOCTRINE AND OVERBREADTH

The trial court held that section 796.01(1)(b)'s definition of lewdness as "any indecent or obscene act" is unconstitutionally vague. A statute is void for vagueness if it "does not give people of ordinary intelligence fair notice of what constitutes forbidden conduct." Warren v. State, 572 So.2d 1376 (Fla. 1991); Papachristou v. City of Jacksonville, 405 U.S. 156, 92 S.Ct. 839, 31 L.Ed.2d 110 (1972). As recently as 1991, the Florida Supreme Court held that the word "lewdness" in section 796.01(1)(b) met the standard set forth above and is not unconstitutionally vague. Warren, 572 So.2d at 1377; see also Bell v. State, 289 So.2d 388 (Fla.1973).
Appellees acknowledge Warren but request this court to readdress the issue, maintaining that the definition of lewdness in section 796.01(1)(b) is unwieldy in practice. In 1993, we rejected this argument and declined to revisit the issue. State v. Davis, 623 So.2d 622 (Fla. 4th DCA 1993). We are bound by the supreme court's decision that section 796.07(1)(b) is not unconstitutionally vague. See id. at 624.
We also reverse the trial court's determination that section 796.07(1)(b) is overbroad. A statute is overbroad if it prohibits constitutionally protected conduct. E.g., State v. T.B.D., 656 So.2d 479, 481 (Fla.1995), cert. denied, ___ U.S. ___, 116 S.Ct. 1014, 134 L.Ed.2d 95 (1996). "[W]here conduct and not merely speech is involved,... the overbreadth of a statute must not only be real, but substantial as well, judged in relation to the statutes' plainly legitimate *357 sweep." Broadrick v. Oklahoma, 413 U.S. 601, 615, 93 S.Ct. 2908, 2918, 37 L.Ed.2d 830 (1973); T.B.D., 656 So.2d at 481-82. For a successful overbreadth challenge, there must be a realistic danger that the statute will significantly compromise the First Amendment rights of parties not presently before the court. T.B.D., 656 So.2d at 482; Davis, 623 So.2d at 623-24.
Section 797.07(1)(b) is codified under the chapter entitled "Prostitution." In Schmitt v. State, 590 So.2d 404, 415 (Fla.1991), cert. denied, 503 U.S. 964, 112 S.Ct. 1572, 118 L.Ed.2d 216 (1992), the supreme court noted that the word "lewd" has a sufficiently narrow meaning under Florida's common law. Lewdness has traditionally been associated with gross indecency with respect to sexual relations. See Chesebrough v. State, 255 So.2d 675, 677-78 (Fla.1971), cert. denied, 406 U.S. 976, 92 S.Ct. 2427, 32 L.Ed.2d 676 (1972). As our supreme court has already determined, section 796.07, including the definition of lewdness, withstands an attack on grounds of overbreadth. Bell, 289 So.2d at 390; see Davis, 623 So.2d at 623-24.

III. RIGHT OF PRIVACY

The trial court's final reason for dismissing the information was that the charges violated appellees' right to privacy under the Florida Constitution. We disagree, because appellees had no legitimate expectation of privacy in the conduct which formed the basis for the criminal charges.
In November 1980, Florida voters approved a constitutional amendment adding a general right to privacy to the Declaration of Rights:
Every natural person has the right to be let alone and free from governmental intrusion into his private life except as otherwise provided herein. This section shall not be construed to limit the public's right of access to public records and meetings as provided by law.
Art. I, § 23, Fla. Const. This freestanding constitutional provision provides "an explicit textual foundation for those privacy interests inherent in the concept of liberty which may not otherwise be protected by specific constitutional provisions." Rasmussen v. South Florida Blood Service, Inc., 500 So.2d 533, 536 (Fla.1987). "The concept of privacy or right to be let alone is deeply rooted in our heritage and is founded upon historical notions and federal constitutional expressions of ordered liberty." Winfield v. Division of Pari-Mutuel Wagering, Dep't of Business Regulation, 477 So.2d 544, 546 (Fla.1985).
Florida's explicit right to privacy is broader in scope than the right of privacy implied under the federal constitution. Winfield v. Division of Pari-Mutuel Wagering, Dept. of Business Regulation, 477 So.2d 544, 548 (Fla.1985). The federal privacy protection includes only personal rights that can be deemed "fundamental" or "implicit in the concept of ordered liberty." Paris Adult Theater I, 413 U.S. at 65, 93 S.Ct. at 2639. The United States Supreme Court has recognized that the federal right encompasses and protects "the personal intimacies of the home, the family, marriage, motherhood, procreation, and child rearing." Id. Florida's right of privacy "embraces more privacy interests, and extends more protection to the individual in those interests, than does the federal Constitution." In re T.W., 551 So.2d 1186, 1192, (Fla.1989); accord Mozo v. State, 632 So.2d 623, 632-33 (Fla. 4th DCA 1994), aff'd, 655 So.2d 1115 (Fla. 1995).
The supreme court first considered article I, section 23 in Winfield, where it held that privacy is a fundamental right subject to the compelling state interest standard of review. 477 So.2d at 547. If the right attaches to a claimed privacy interest, the burden of proof shifts to the state to prove that a governmental intrusion on privacy both serves a compelling state interest and accomplishes its goal through the least intrusive means. Id. Before the right to privacy attaches and the compelling state interest standard is applied, there must be a "legitimate" expectation of privacy. City of North Miami v. Kurtz, 653 So.2d 1025, 1028 (Fla. 1995), cert. denied, ___ U.S. ___, 116 S.Ct. 701, 133 L.Ed.2d 658 (1996); Stall v. State, 570 So.2d 257, 260 (Fla.1990), cert. denied sub nom., Long v. Florida, 501 U.S. 1250, 111 S.Ct. 2888, 115 L.Ed.2d 1054 (1991); Winfield, 477 So.2d at 547. "Determining *358 whether an individual has a legitimate expectation of privacy in any given case must be made by considering all the circumstances, especially objective manifestations of that expectation." Stall, 570 So.2d at 260 (quoting Shaktman v. State, 553 So.2d 148, 153 (Ehrlich, C.J., concurring)); City of North Miami, 653 So.2d at 1028. Delineating the zone of privacy protected by the constitution begins with the subjective expectations of the individual, which are protected "provided they are not spurious or false." Mozo, 632 So.2d at 634.
The supreme court considered the application of article I, section 23 to the sale or purchase of obscene materials in Stall. There the state charged several defendants with violating Florida's obscenity statute, section 847.011, Florida Statutes (1985), by the "showing, sale, distribution, and rental of allegedly obscene writings and tapes and objects allegedly intended for obscene purposes." Id. at 258. The defendants contended that the statute violated Florida's right to privacy. The supreme court held that the privacy amendment did not extend to those persons who dealt commercially in obscenity:
Although one may possess obscene material in one's home, there is no legitimate reasonable expectation of privacy in being able to patronize retail establishments for the purpose of purchasing such material.
Id. at 260. To reach this conclusion, the supreme court relied on the analysis of the United States Supreme Court in Paris Adult Theatre Ithat the state has a legitimate interest in "stemming the tide of commercialized obscenity" and that the right to privacy applies to personal matters, and not to commercial ventures or transactions. Id. at 260-61 (citing Paris Adult Theatre I, 413 U.S. at 65, 93 S.Ct. at 2639). The court adopted the language of the district court that although Florida's right of privacy is broader than the federal right
it is not so broad that a person can take it to the store in order to purchase obscene materialeven though he has the right to possess such material in the privacy of his home.
Id. at 262 (quoting State v. Long, 544 So.2d 219, 223 (Fla. 2d DCA 1989)).
If under Stall there is no privacy right to patronize a retail establishment to purchase obscene material, then there can be no right to patronize a commercial establishment to buy a live, lewd performance violative of section 796.07(3)(a). This was the essence of our holding in State v. Davis. The facts of Davis are similar to those in this case:
[A] ... detective entered the premises of a business known as "Celebrity Models;" inquired about the various services offered; selected the service he desired; paid a fee and accompanied appellee into a private, closed room where the act alleged in the information occurred. No one else was present in the room except for the detective and appellee. The building housing the business was constructed in a manner wherein members of the public could not see into the premises.
623 So.2d at 623 (footnote omitted). Davis was charged with engaging in a lewd act in violation of section 796.07(3) for "dancing topless in close proximity to [the detective], encouraging him to masturbate and placing his hand on her inner thigh." Id. at 623 n. 1. Addressing a constitutional attack on the statute, we held:
[T]he claimed unconstitutionality of section 796.07(3) as violating the right of privacy is at odds with the state's compelling interest in outlawing prostitution, assignation and lewd behavior, particularly where such conduct involves the sale of services in a commercial enterprise. The record below, furthermore, reflects appellee[s] did not have a reasonable expectation of privacy at a place where the public could patronize.
Id. at 624.
The trial court distinguished Davis based on the detective's testimony in this case that he rented the room and did not expect anyone else to enter. We are not convinced by this distinction, since the detectives in both cases were escorted to private rooms in comparable establishments. Florida's right to privacy is broad and deep, but it is not a guarantee against all intrusion into the private life of an individual. Kurtz, 653 So.2d at 1027-28; Stall, 570 So.2d at 262. Although a person's subjective expectation of privacy is *359 one consideration in deciding whether a constitutional right attaches, the final determination of an expectation's legitimacy takes a more global view, placing the individual in the context of a society and the values that the society seeks to foster.[4] The right to privacy has not made each person a solipsistic island of self-determination. Florida's constitutional right to privacy is not implicated in this case.
Accordingly, the orders appealed from are reversed, the information is reinstated and the cause is remanded to the trial court for further proceedings consistent with this opinion.[5]
DELL and POLEN, JJ., concur.
NOTES
[1] Section 26.012(1) provides that "[c]ircuit courts shall have jurisdiction of appeals from county courts except appeals of county court orders or judgments declaring invalid a state statute or a provision of the State Constitution...."
[2] Rule 9.030(b)(1)(A) provides:

(1) Appeal Jurisdiction. District courts of appeal shall review, by appeal
(A) final orders of trial courts, not directly reviewable by the supreme court or a circuit court.
(footnotes omitted).
[3] In pertinent part, the information charged that Conforti and Urbano "did ... unlawfully engage in a lewd act, to-wit: cunnilingus and masturbation in the presence of a male patron of "Studio XXX" adult business ... in violation of F.S. 796.07(3)."
[4] In Stall, the supreme court quoted the following from Paris Adult Theatre I:

... A man may be entitled to read an obscene book in his room, or expose himself indecently there ... We should protect his privacy. But if he demands a right to obtain the books and pictures he wants in the market, and to foregather in public placesdiscreet, if you will but accessible to allwith others who share his tastes, then to grant him his right is to affect the world about the rest of us, and to impinge on other privacies. Even supposing that each of us can, if he wishes, effectively avert the eye and stop the ear (which, in truth, we cannot), what is commonly read and seen and heard and done intrudes upon us all, want it or not.
413 U.S. at 59, 93 S.Ct. at 2636 (quoting 22 The Public Interest 25-26 (Winter 1971)), (footnote omitted) (emphasis added in Paris Adult Theatre I, 570 So.2d at 261-62).
[5] This court's disposition pertains to the legal issues raised and should not be construed as dispositive of any factual or evidentiary matter that may later be presented.