882 So.2d 1037 (2004)
Fred A. THOMAS and Joy S. Thomas, Appellants,
v.
Jim SMITH, in his capacity as Property Appraiser of Pinellas County, Florida; Diane Nelson, in her capacity as Tax Collector of Pinellas County, Florida; and Jim Zingale, in his capacity as Executive Director of the State of Florida, Department of Revenue, Appellees.
No. 2D02-4018.
District Court of Appeal of Florida, Second District.
August 13, 2004.
*1038 Michael S. Hooker and Guy P. McConnell of Glenn Rasmussen Fogarty & Hooker, P.A., Tampa, for Appellants.
Susan Churuti, County Attorney, and Sarah Richardson, Senior Assistant County Attorney, Clearwater, for Appellee Diane Nelson, in her capacity as Tax Collector of Pinellas County.
Charles J. Crist, Jr., Attorney General, and Mark T. Aliff, Assistant Attorney General, Tallahassee, for Appellee Jim Zingale in his capacity as Executive Director of the State of Florida, Department of Revenue.
No appearance for Appellee Jim Smith, in his capacity as Property Appraiser of Pinellas County.
WALLACE, Judge.
Fred A. Thomas and Joy S. Thomas (the Taxpayers) appeal the circuit court's order dismissing their fifth amended complaint with prejudice. The Taxpayers argue that section 196.011(1)(b), Florida Statutes (1997), which requires disclosure of the Taxpayers' social security numbers as a condition of obtaining a homestead tax exemption for their residence, violates their right to privacy under the Florida Constitution, the federal Privacy Act of 1974 (the Privacy Act), and the Equal Protection Clauses of the Florida and the United States Constitutions. We conclude that the circuit court's dismissal of the Privacy Act and equal protection claims is supported by the record, and we affirm the circuit court's order without further discussion to the extent that it dismissed those claims with prejudice. However, we *1039 agree with the Taxpayers that the circuit court erred in dismissing with prejudice their claim for an alleged violation of their right to privacy under the Florida Constitution. Therefore, we reverse the dismissal of the Taxpayers' fifth amended complaint in part, and we remand this case for further proceedings.

I. LEGAL BACKGROUND
Article VII, section 6, of the Florida Constitution establishes a homestead tax exemption for persons who maintain a permanent residence on real property located in Florida. Pursuant to article VII, section 6(a):
Every person who has the legal or equitable title to real estate and maintains thereon the permanent residence of the owner, or another legally or naturally dependent upon the owner, shall be exempt from taxation thereon, except assessments for special benefits, up to the assessed valuation of five thousand dollars, upon establishment of right thereto in the manner prescribed by law. The real estate may be held by legal or equitable title, by the entireties, jointly, in common, as a condominium, or indirectly by stock ownership or membership representing the owner's or member's proprietary interest in a corporation owning a fee or a leasehold initially in excess of ninety-eight years.
The amount of the homestead exemption is now $25,000. Art. VII, § 6(d), Fla. Const.
The acquisition of homestead status for real property also limits the amount that the property's assessed value can increase in a particular year. Pursuant to article VII, section 4(c), of the Florida Constitution, popularly known as the "Save Our Homes" amendment, the annual increase in the assessed value of homestead property cannot exceed the lesser of:
a. Three percent (3%) of the assessment for the prior year.
b. The percent change in the Consumer Price Index for all urban consumers, U.S. City Average, all items 1967=100, or successor reports for the preceding calendar year as initially reported by the United States Department of Labor, Bureau of Labor Statistics.
Art. VII, § 4(c)(1)(a)-(b), Fla. Const. The Save Our Homes amendment is implemented in section 193.155, Florida Statutes (1997). See generally Richard S. Franklin & Roi E. Baugher III, Protecting and Preserving the Save Our Homes Cap, 77 Fla. B.J. 34 (Oct.2003). The owner of property recognized as homestead for tax purposes thus receives a twofold benefit: (1) a tax exemption of $25,000 and (2) a cap on the amount that the assessed value of the property can rise in a given year.[1]
Section 196.011(1)(b) requires applicants for the homestead tax exemption to supply their social security numbers on an application form as a condition to obtaining the exemption (the required disclosure). Pursuant to the statute, an applicant's failure to provide his or her social security number waives the exemption for the year of the application. Section 196.011(1)(b) provides, in pertinent part:
The form to apply for an exemption ... must include a space for the applicant to list the social security number of the applicant and of the applicant's spouse, if any. If an applicant files a timely and otherwise complete application, *1040 and omits the required social security numbers, the application is incomplete. In that event, the property appraiser shall contact the applicant, who may refile a complete application by April 1. Failure to file a complete application by that date constitutes a waiver of the exemption privilege for that year....
This provision was added by chapter 94-353, section 45, at 2561, Laws of Florida, which became effective June 3, 1994. Ch. 94-353, § 75, at 2576, Laws of Fla.
Rule 12D-7.001(4), Florida Administrative Code, implements section 196.011(1)(b):
Each new applicant for an exemption ... must provide his or her social security number and the social security number of his or her spouse, if any, in the applicable spaces provided on the application form, Form DR-501 (incorporated by reference in Rule 12D-16.002). Failure to provide such numbers will render the application incomplete. If an applicant omits the required social security numbers and files an otherwise complete application, the property appraiser shall contact that applicant and afford the applicant the opportunity to file a complete application on or before April 1. Failure to file a completed application on or before April 1 shall constitute a waiver of the exemption for that tax year, unless the applicant can demonstrate that failure to timely file a completed application was the result of a postal error or, upon filing a timely petition to the value adjustment board, that the failure was due to extenuating circumstances as provided in section 196.011, Florida Statutes.
Thus, pursuant to Florida's statutory and administrative requirements, a homeowner cannot obtain the benefits of the constitutional homestead tax exemption unless he or she is willing to make the required disclosure.

II. THE TAXPAYERS' APPLICATION
On February 24, 1997, the Taxpayers filed a timely application for ad valorem tax exemption with the Property Appraiser of Pinellas County, Florida (the Property Appraiser), seeking a homestead exemption for their property located in Pinellas County.[2] The Taxpayers declined to make the required disclosure. In July 1997, the Property Appraiser notified the Taxpayers that their 1997 application had been denied. The reason for the Property Appraiser's denial of the 1997 application was the Taxpayers' refusal to make the required disclosure. After the denial of their homestead request, the Taxpayers filed a petition with the Pinellas County Value Adjustment Board (the Board) to seek review of the Property Appraiser's decision. After a hearing on the petition, a special master recommended that the Board deny the Taxpayers' homestead request. On October 7, 1997, the Board adopted the recommendation and affirmed the denial of the Taxpayers' 1997 application. The Board's denial of the 1997 application was based on the Taxpayers' refusal to make the required disclosure. It appears that the Taxpayers are otherwise fully qualified for a homestead exemption. The Taxpayers' property was assessed in 1997 and in each subsequent year at issue *1041 without the benefit of the homestead exemption, and they did not have the benefit of the Save Our Homes cap.
Prior to filing their initial complaint in the circuit court, the Taxpayers paid the tax assessed on their 1997 tax bill. The Taxpayers have continued to pay their assessed taxes during subsequent years. The Taxpayers claim that by reason of the assessment of taxes against the property without the benefit of the homestead tax exemption and the absence of the Save Our Homes cap, they have paid higher amounts of property taxes than they would have paid otherwise.

III. THE PROCEEDINGS IN THE CIRCUIT COURT
On October 22, 1997, the Taxpayers filed their initial complaint in the circuit court. The Taxpayers named as defendants the Property Appraiser, the Tax Collector of Pinellas County, Florida (the Tax Collector), and the Executive Director of the State of Florida, Department of Revenue (the Department).[3] The Taxpayers initially sought relief only with respect to tax year 1997. As the litigation progressed, the Taxpayers amended their complaint several times to seek relief with respect to subsequent tax years. The Taxpayers' fifth amended complaint, which was ultimately dismissed by the circuit court, sought relief with respect to tax years 1997 through 2001.
The Taxpayers' fifth amended complaint sought both declaratory relief and a refund of the additional property taxes that the Taxpayers claim to have paid on account of the denial of their application for homestead tax exemption. The Taxpayers advanced three claims in support of their request for declaratory relief. First, the Taxpayers asserted that section 196.011(1)(b) and rule 12D-7.001(4) violated their constitutional right of privacy under article I, section 23, of the Florida Constitution. Second, the Taxpayers claimed that section 196.011(1)(b) and rule 12D-7.001(4) violated provisions of the Privacy Act because the homestead application forms utilized by the Property Appraiser failed to provide all of the information required by subparagraph (b) of the Privacy Act. Third, the Taxpayers contended that section 196.011(1)(b) and rule 12D-7.001(4) violated their right to equal protection under the law as guaranteed by article I, section 2, of the Florida Constitution, and Section 1 of the Fourteenth Amendment to the United States Constitution. In addition to declaratory relief, the Taxpayers also sought a refund of the amounts that they paid in property taxes in excess of the amount that they claimed they would have paid had they been granted the homestead tax exemption for which they applied in 1997. The Taxpayers sought the difference between the total amount that they paid in taxes and the amount that they claim should have been assessed against the property after giving them the benefit of the homestead tax exemption and the Save Our Homes cap.[4]
The taxing authorities answered the complaint and raised various defenses to the relief sought by the Taxpayers. The Property Appraiser expressed no opinion concerning the validity of the required disclosure but pointed out that he was obligated by law to follow the statute. The Tax Collector raised the defense that with *1042 respect to tax years 1998, 1999, 2000, and 2001, the refunds sought by the Taxpayers were barred by the nonclaim statute in section 194.171(6), Florida Statutes (1997). The Tax Collector alleged that the court lacked jurisdiction to hear matters involving tax years 1998, 1999, 2000, and 2001. The Department took the lead in contesting the Taxpayers' constitutional and Privacy Act claims.
The Taxpayers ultimately filed a motion for summary judgment on all of their claims, contending that there was no genuine issue as to any material fact and that they were entitled to a judgment as a matter of law. None of the taxing authorities filed a cross-motion for summary judgment.[5] After a hearing, the circuit court entered an order that denied the Taxpayers' motion for summary judgment and dismissed with prejudice their fifth amended complaint. In its order, the circuit court ruled that the Taxpayers were unable to prove any set of facts that would entitle them to relief and rejected their privacy and equal protection claims. The Taxpayers timely appealed the circuit court's order.

IV. JURISDICTIONAL ISSUES
The Tax Collector contends that the circuit court lacked subject matter jurisdiction as to tax years 1998 to 2001 because the Taxpayers' claims for relief for those years are barred by the statute of nonclaim in section 194.171(6), Florida Statutes (1997).[6] At the hearing on the Taxpayers' motion for summary judgment, the circuit court said that it would first resolve the Taxpayers' constitutional challenge to the required disclosure. Then, if the Taxpayers were successful in their constitutional challenge, the court could address whether the Taxpayers were entitled to an exemption only for 1997 or for 1997 through 2001.
Although subject matter jurisdiction may be raised at any time, the parties acknowledge that the jurisdictional challenge is limited to a portion of the Taxpayers' claims and its resolution will not dispose of the principal issue that lies at the heart of this case. Because the circuit court reserved jurisdiction of this issue and because the case must be remanded for further proceedings in any event, we decline to rule on the jurisdictional question. The circuit court may address this issue on remand.

V. PROCEDURAL MATTERS
The circuit court's order denied the Taxpayers' motion for summary judgment and dismissed with prejudice their fifth amended complaint. In its order, the circuit court specifically found that there "are no genuine issues of material fact and [the Taxpayers] are not entitled to a judgment as a matter of law." Therefore, the effect of the circuit court's order was to grant a summary judgment in favor of the nonmoving parties  the taxing authorities. A trial court may, under certain circumstances, enter a summary judgment in favor of a nonmoving party. See Carpineta v. Shields, 70 So.2d 573, 574 (Fla.1954). Nevertheless, the better practice is to require a timely motion. See First Union Nat'l Bank of Fla. v. Maurer, 597 So.2d 429, 430 (Fla. 2d DCA 1992); City of Pinellas Park v. Cross-State Utils. Co., 176 *1043 So.2d 384, 386 (Fla. 2d DCA 1965). The entry of a summary judgment for the nonmoving party is not appropriate if the party against whom the summary judgment is entered has not had an opportunity to rebut the asserted factual or legal basis for the judgment. See Manfrin v. Auto Owners Ins. Co., 805 So.2d 973, 975 (Fla. 2d DCA 2001) (Northcutt, J., concurring); John K. Brennan Co. v. Cent. Bank & Trust Co., 164 So.2d 525, 530 (Fla. 2d DCA 1964).

VI. THE STANDARD OF REVIEW
The standard of review of a summary judgment order is de novo. Major League Baseball v. Morsani, 790 So.2d 1071, 1074 (Fla.2001); Volusia County v. Aberdeen at Ormond Beach, L.P., 760 So.2d 126, 130 (Fla.2000); Smith v. Frontier Communications Int'l, Inc., 805 So.2d 975, 977 (Fla. 2d DCA 2001).

VII. THE RIGHT TO PRIVACY UNDER THE FLORIDA CONSTITUTION

A. The Scope of the Right to Privacy

Article I, section 23, of the Florida Constitution provides: "Every natural person has the right to be let alone and free from governmental intrusion into the person's private life except as otherwise provided herein. This section shall not be construed to limit the public's right of access to public records and meetings as provided by law." The right to privacy provided for in the Florida Constitution is broader in scope than the protection provided in the United States Constitution. See Winfield v. Div. of Pari-Mutuel Wagering, 477 So.2d 544, 548 (Fla.1985); Berkeley v. Eisen, 699 So.2d 789, 790 (Fla. 4th DCA 1997).
One of the principal concerns of the drafters of the amendment that became article I, section 23 was the right to informational privacy. See Rasmussen v. S. Fla. Blood Serv., Inc., 500 So.2d 533, 536 (Fla.1987). At the opening session of Florida's 1977-78 Constitution Revision Commission, then Chief Justice Ben F. Overton remarked:
[W]ho, ten years ago, really understood that personal and financial data on a substantial part of our population could be collected by government or business and held for easy distribution by computer operated information systems? There is a public concern about how personal information concerning an individual citizen is used, whether it be collected by government or business. The subject of individual privacy and privacy law is in a developing stage.... It is a new problem that should probably be addressed.
Id. at 536. Therefore, "a principal aim of the constitutional provision is to afford individuals some protection against the increasing collection, retention, and use of information relating to all facets of an individual's life." Id. The right to privacy in the Florida Constitution "ensures that individuals are able `to determine for themselves when, how and to what extent information about them is communicated to others.'" Shaktman v. State, 553 So.2d 148, 150 (Fla.1989) (quoting A. Westin, Privacy and Freedom 7 (1967)). As the supreme court noted in Rasmussen, 500 So.2d at 536 (footnote omitted): "Although the general concept of privacy encompasses an enormously broad and diverse field of personal action and belief, there can be no doubt that the Florida amendment was intended to protect the right to determine whether or not sensitive information about oneself will be disclosed to others." Against this background, it seems obvious that private, sensitive, and confidential information regarding individuals is protected *1044 by the privacy clause in the Florida Constitution.[7]

B. The Test for Assessing the Taxpayers' Privacy Claim

Nevertheless, the right of privacy "was not intended to provide an absolute guarantee against all governmental intrusion into the private life of an individual." Fla. Bd. of Bar Examiners re: Applicant, 443 So.2d 71, 74 (Fla.1983). "The right of privacy does not confer a complete immunity from governmental regulation and will yield to compelling governmental interests." Winfield, 477 So.2d at 547. In Winfield, the supreme court announced the test to be used in assessing a claim of unconstitutional governmental intrusion into privacy rights under article I, section 23. Id. Courts must first determine whether the individual possesses a legitimate expectation of privacy in the information or subject at issue. If so, then the burden shifts to the State to show that (a) there is a compelling state interest warranting the intrusion into the individual's privacy and (b) the intrusion is accomplished by the least intrusive means. Id. Legislation that infringes on the right to privacy will be invalidated unless it can survive the compelling state interest test. See Von Eiff v. Azicri, 720 So.2d 510, 514 (Fla.1998); In re T.W., 551 So.2d 1186, 1192 (Fla.1989); Caddy v. State, Dep't of Health, 764 So.2d 625, 629-30 (Fla. 1st DCA 2000). The Supreme Court of Florida has recently reaffirmed the applicability of the compelling state interest test to the determination of questions arising under Florida's right of privacy. N. Fla. Women's Health & Counseling Servs., Inc. v. State, 866 So.2d 612, 620 (Fla.2003).

C. The Circuit Court's Ruling

In assessing the Taxpayers' claims under the Florida Constitution's right of privacy, the circuit court found that the Taxpayers had no legitimate expectation of privacy under the circumstances presented in the case. The circuit court went on to find that in the event the Taxpayers did have a reasonable expectation of privacy, the requirement that the Taxpayers furnish their social security numbers as a condition of obtaining the benefit of the constitutional homestead tax exemption "forward[ed] a legitimate state interest [in] reducing homestead exemption fraud."[8] In making this alternative finding, the circuit court failed to apply the part of the Winfield test that called for a determination of whether a "compelling state interest"  not a "legitimate state interest"  warranted the intrusion into the Taxpayers' privacy. The circuit court also did not address the issue of whether requiring the Taxpayers to furnish their social security numbers as a condition of obtaining the tax benefit accomplished the State's goal through the use of the least intrusive means.
We disagree with the circuit court's legal conclusion that the Taxpayers did not *1045 possess a legitimate expectation of privacy in their social security numbers. We think the proposition that citizens of the State of Florida possess a legitimate expectation of privacy in their social security numbers is so obvious as to be hardly open to debate. Numerous authorities support this conclusion.

D. Legitimate Expectation of Privacy

1. Authority

The expectation of privacy that individuals have in their social security numbers has been acknowledged by the federal government, the State of Florida, and numerous other states. The United States Congress recognized the sensitive and confidential nature of social security numbers more than twenty-five years ago when it enacted the Privacy Act. See generally Doyle v. Wilson, 529 F.Supp. 1343, 1348 (D.Del.1982). In 2002, the Florida Legislature enacted section 119.0721[9] which makes social security numbers confidential and exempt from public disclosure under the public records law. Ch.2002-256, Laws of Fla. As part of its findings in support of the law, the legislature noted the "sensitive personal nature" of social security numbers and their potential for misuse as "the link to an individual's personal, financial, medical, or familial records." Ch.2002-256, § 2, Laws of Fla. The Supreme Court of Florida has amended the Florida Family Law Rules of Procedure to exclude documents containing social security numbers from court files in order to limit the possibility of identity theft. Amendments to the Florida Family Law Rules of Procedure, 853 So.2d 303 (Fla.2003). The supreme court has also approved amendments to the Florida Family Law Forms designed to delete unnecessary requests for social security numbers. Amendments to the Florida Family Law Forms, 817 So.2d 721 (Fla.2001). The First District Court of Appeal concluded that investigative subpoenas issued by the Attorney General to "payday" lenders did not implicate the right to privacy found in article I, section 23, of the Florida Constitution after the Attorney General agreed to modify the subpoenas to eliminate a demand for the customers' social security and bank account numbers. Advance Am. v. State, Office of Att'y Gen., 801 So.2d 310 (Fla. 1st DCA 2001). Other district courts of appeal have recognized the confidential and sensitive nature of personnel records containing employee social security numbers in protecting such records from wholesale disclosure. E.g., Seta Corp. of Boca, Inc. v. Office of Att'y Gen., 756 So.2d 1093 (Fla. 4th DCA 2000); CAC-Ramsay Health Plans, Inc. v. Johnson, 641 So.2d 434 (Fla. 3d DCA 1994).
Moreover, various other courts have found that individuals possess a legitimate expectation in the privacy of their social security numbers. E.g., Greidinger v. Davis, 988 F.2d 1344, 1353-54 (4th Cir.1993); Aronson v. Internal Revenue Serv., 767 F.Supp. 378, 388 (D.Mass.1991), affirmed in part and reversed in part on other grounds, 973 F.2d 962 (1st Cir.1992); Int'l Bhd. of Elec. Workers Local Union No. 5 v. United States Dep't of Hous. & Urban Dev., 852 F.2d 87, 89 (3d Cir.1988); Arakawa v. Sakata, 133 F.Supp.2d 1223, 1229 (D.Haw.2001); State ex rel. Beacon Journal Publ'g Co. v. City of Akron, 70 Ohio St.3d 605, 640 N.E.2d 164 (1994); Tribune-Review Publ'g Co. v. Allegheny County Hous. Auth., 662 A.2d 677 (Pa.Commw.Ct.1995). But see Pontbriand v. Sundlun, 699 A.2d 856, 868-70 (R.I.1997). *1046 See generally Flavio L. Komuves, We've Got Your Number: An Overview of Legislation and Decisions to Control the Use of Social Security Numbers as Personal Identifiers, 16 J. Marshall J. Computer & Info. L. 529, 561-65 (1998).

2. The Taxing Authorities' Cases

The taxing authorities argued in the circuit court and have argued here that the Taxpayers did not have a legitimate expectation of privacy in their social security numbers, citing three cases in support of their position. We find these cases to be easily distinguishable. In City of North Miami v. Kurtz, 653 So.2d 1025 (Fla.1995), the Supreme Court of Florida merely held that an applicant for employment with the City of North Miami had no legitimate expectation of privacy in whether or not she used tobacco products. In State v. Conforti, 688 So.2d 350 (Fla. 4th DCA 1997), the Fourth District held that exotic dancers were not protected from prosecution against a charge of engaging in lewd acts in violation of section 796.07(3), Florida Statutes (1991), by Florida's constitutional right to privacy. The only case cited by the taxing authorities involving a requirement that an applicant furnish a social security number to a governmental agency is Board of County Commissioners v. D.B., 784 So.2d 585 (Fla. 4th DCA 2001). However, the question of whether an individual has a legitimate expectation of privacy in his or her social security number was not before the court in D.B. The decision in D.B. must be confined to its facts, which arose in the context of an ordinance designed to regulate adult entertainment establishments. Thus D.B. is distinguishable from this case, which involves an application for a benefit guaranteed to Florida homeowners by the Florida Constitution.

3. The Circuit Court's Analysis

The circuit court concluded that the Taxpayers did not possess a legitimate expectation of privacy in their social security numbers because they were attempting to take advantage of a tax exemption. As the circuit court correctly noted, there is no absolute right to the homestead exemption. See Horne v. Markham, 288 So.2d 196, 199 (Fla.1973). Taxpayers who otherwise qualify for the homestead exemption shall be granted an exemption only "upon establishment of right thereto in the manner prescribed by law." Art. VII, § 6(a), Fla. Const. In this case, the manner prescribed by law includes the submission of an application containing the social security number of the applicant.
We think the circuit court's approach is inadequate and misses the point. There are few governmental privileges or benefits, constitutional or otherwise, to which one has an absolute right. One must generally apply and complete an appropriate application or similar document.[10] If the State or another governmental agency is able to impose disclosure as a condition of obtaining the desired governmental privilege or benefit without demonstrating a compelling state interest, then disclosure of the social security number could be imposed as a condition of obtaining virtually *1047 any governmental privilege or benefit. This view of the matter would render the constitutional right to informational privacy a dead letter.
The correct approach to a resolution of the issue is the one announced in Winfield, 477 So.2d at 547. The circuit court should first have determined whether the Taxpayers had a legitimate expectation of privacy in their social security numbers without regard to other considerations such as the necessity to submit an application in order to obtain the benefit of the homestead tax exemption. If the answer to that question was "yes," then the burden shifted to the taxing authorities to prove both a compelling state interest and that the requirement accomplished the state's goal by the least intrusive means. In its analysis, the circuit court failed to properly apply the Winfield test.

E. Disposition of Right to Privacy Claim

The trial court erred in concluding that the Taxpayers had no legitimate expectation of privacy in their social security numbers. Therefore, a reversal and remand for further proceedings on the Taxpayers' privacy claim is required. On remand, the circuit court must consider the Taxpayers' privacy claim under the correct legal standard as articulated in Winfield. The circuit court must first determine whether the taxing authorities have demonstrated a compelling state interest in requesting disclosure of an individual's social security number on the application for homestead tax exemption. If so, the circuit court must then determine whether the required disclosure meets the least intrusive means test.

VIII. CONCLUSION
For the foregoing reasons, we reverse the circuit court's order to the extent that it dismissed the Taxpayers' claims for the alleged violation of their right to privacy under the Florida Constitution, and we remand for further proceedings on this claim. On remand, the circuit court may address the jurisdictional issue relating to the Taxpayers' refund claims for alleged overpayments for tax years 1998 through 2001. In all other respects, we affirm the circuit court's order.
Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.
SILBERMAN and VILLANTI, JJ., Concur.
NOTES
[1] But see Powell v. Markham, 847 So.2d 1105 (Fla. 4th DCA), review granted by Zingale v. Powell, 860 So.2d 980 (Fla.2003) (holding that property owners who had not applied for but were otherwise qualified to obtain a homestead tax exemption on their residence were entitled to the application of the Save Our Homes cap to the increase in the assessed value of their property).
[2] For reasons to be discussed in part V of this opinion, the circuit court's order dismissing the Taxpayers' fifth amended complaint was tantamount to a summary judgment for the taxing authorities. Accordingly, we draw the facts from the pleadings, depositions, answers to interrogatories, admissions, and affidavits in the record and review them in the light most favorable to the Taxpayers as the parties against whom the summary judgment was entered. See Markowitz v. Helen Homes of Kendall Corp., 826 So.2d 256, 259 (Fla.2002).
[3] The Property Appraiser participated in the proceedings in the circuit court but has not filed an appearance in this court. We will refer to the three defendants collectively as "the taxing authorities."
[4] The Taxpayers' claim for tax year 1997 was $530.80. The total claim for all of the five years for which recovery was ultimately sought was $4,054.13.
[5] In a memorandum of law filed in opposition to the Taxpayers' motion for summary judgment, the Department requested that the circuit court enter a summary judgment against the Taxpayers on their right to privacy and equal protection claims.
[6] The Tax Collector concedes that the circuit court had jurisdiction to consider the Taxpayers' claims for tax year 1997.
[7] For further information on the privacy right provided for in the Florida Constitution, see generally Daniel R. Gordon, Upside Down Intentions: Weakening the State Constitutional Right to Privacy, A Florida Story of Intrigue and a Lack of Historical Integrity, 71 Temple L.Rev. 579 (1998); Ben F. Overton & Katherine E. Giddings, The Right of Privacy in Florida in the Age of Technology and the Twenty-First Century: A Need for Protection from Private and Commercial Intrusion, 25 Fla. St. U.L.Rev. 25, 34-41 (1997); John Sanchez, Constitutional Privacy in Florida: Between the Idea and the Reality Falls the Shadow, 18 Nova L.Rev. 775 (1994).
[8] Gary Graves, a senior appraiser employed by the Department, testified in a deposition filed by the Taxpayers in support of their motion for summary judgment that the primary purpose of the required disclosure "is to identify potential homestead fraud."
[9] This section was originally designated as section 119.072 and was redesignated as section 119.0721 in Florida Statutes (2002).
[10] For example, article I, section 21, of the Florida Constitution guarantees that "[t]he courts shall be open to every person for the redress of any injury," but a prospective litigant must complete and file a "civil cover sheet" in order to initiate a lawsuit. § 25.075, Fla. Stat. (2003); Form 1.997, Fla. R. Civ. P. Similarly, with some exceptions not pertinent here, article X, section 4, of the Florida Constitution makes certain types of property exempt from forced sale at the hands of creditors, but the debtor may be obliged to prepare and submit appropriate documents in order to take full advantage of the exemption right afforded by the constitution. §§ 222.02-.04, .061-.07, Fla. Stat. (2003).