801 So.2d 310 (2001)
ADVANCE AMERICA, Cash Advance Centers of Florida, Inc. and McKenzie Check Advance of Florida, LLC, Appellants,
v.
STATE of Florida, OFFICE OF the ATTORNEY GENERAL, DEPARTMENT OF LEGAL AFFAIRS, Appellee.
No. 1D01-345.
District Court of Appeal of Florida, First District.
December 17, 2001.
Lori S. Rowe, Peter Antonacci and G. Robertson Dilg of Gray, Harris & Robinson, P.A., Tallahassee, for Appellants.
Robert A. Butterworth, Attorney General; Roger B. Handberg, Cecilia Bradley, and Lisa M. Raleigh, Assistant Attorney Generals, Tallahassee, for Appellee.
WOLF, J.
Appellants challenge an order of the circuit court compelling compliance with investigative subpoenas issued by the Office of the Attorney General. Appellants argue that the Attorney General did not have the legal authority to issue the subpoenas in question; that the subpoenas were too broad in scope; that the subpoenas violated the right of privacy of their customers; and that the subpoenas improperly demanded production of the trade secrets of appellants.
We find no merit as to the trade secrets argument and affirm without further discussion as to that issue. The Attorney General's Office has agreed within its brief that appellants need not provide their customers' social security and bank account numbers; we, therefore, determine that appellee's subpoenas as modified do not implicate the right of privacy found in Article I, section 23 of the Florida Constitution and affirm as to that issue. We also affirm as to the Attorney General's authority to issue the subpoenas in question in *311 accordance with the standards enumerated in Check `n Go of Florida, Inc. v. State, 790 So.2d 454 (Fla. 5th DCA 2001).
The only issue which requires discussion concerns the scope of the Attorney General's subpoenas. We reverse as to that issue and limit the amount of material which must be produced pursuant to the subpoenas as discussed herein.
Appellants, Advance America and McKenzie Check Advance of Florida, make "payday loans," which provide customers with cash in exchange for a personal check held by the lender for an agreed upon period of time. The payday loan business is regulated by the Department of Banking and Finance pursuant to Chapter 560, Florida Statutes (2000). By a letter dated May 5, 1998, the Office of the Comptroller, Department of Banking and Finance, informed appellants and all payday lenders that under section 687.02, Florida Statutes, it is illegal to charge over 18% annual interest and warned that "[a]ny `rollover,' `extension' or `renewal' of a deferred deposit check for an additional fee may constitute interest."
Prior to May 5, 1998, it was a common practice for payday lenders to renew or "rollover" payday loans at the customer's request for an additional fee without receiving payment or creating new payment documents. Such practices could result in payday loans with extremely high and illegal rates of interest. Appellants allege that after May 5, 1998, their practice changed: they no longer have "rollover" transactions, but instead they have instituted "consecutive transactions" in which the payoff of one transaction must be made before a new transaction for new cash and fees can be initiated.
On May 1, 2000, in response to a question from the Office of the Comptroller regarding whether payday loans are subject to usury laws, the Attorney General issued an opinion that payday loans are subject to the laws prohibiting usurious interest rates, concluding that such transactions violate the usury laws if they are "extended, renewed, or in any way continued with the imposition of additional fees." Op. Att'y Gen. Fla.2000-26 (2000). After the opinion issued, the Attorney General undertook investigations pursuant to chapter 895, Florida Statutes (2000), the Florida RICO Act, to determine whether appellants (and other members of the payday loan industry) were complying with chapter 895 and the usury laws in the conduct of their business in Florida.[1]
As part of its investigation, the Office of the Attorney General served essentially identical subpoenas on both appellants. The subpoenas demanded production of documents "prepared, sent, dated, received, in effect, or [that] otherwise came into existence at anytime on or after January 1, 1994," including,
[a]ll documents that refer or relate in any manner to any transaction conducted pursuant to Chapter 560 ... [and][a]ll documents that refer or relate in any manner to those instances in which you imposed additional fees, charges, or interest in return for extending, renewing, continuing, or rolling over any transaction conducted pursuant to Chapter 560, Florida Statutes.
The subpoenas enumerated three and onehalf pages of specific categories of documents to be produced which included documents related to operations outside of the State of Florida. The term "document" was defined in the subpoenas as "each and every written, recorded, or graphic matter of any kind, type, nature, or description that is or has been in the possession, custody, or control of Advance America, or of *312 which Advance America has knowledge...."
The Attorney General made several efforts to resolve disputes regarding the scope of the subpoenas. On August 22, 2000, the Office of the Attorney General sent a letter to appellants offering to modify the scope of the subpoenas by, among other things, requiring production of documents from only 15 of their 147 Florida stores. The subpoenas, as modified, still requested information back to 1994 from locations outside of Florida. Appellants did not comply as ordered in the subpoenas.
On October 26, 2000, the Attorney General filed a motion to compel compliance with the subpoenas. The trial court issued an order on December 22, 2000, granting the Attorney General's motion to compel appellants' compliance with the investigatory subpoenas.
The subpoenas in this case seek information which is not substantially different from the information which was found to be overbroad in Check `n Go of Florida, Inc. v. State, 790 So.2d 454 (Fla. 5th DCA 2001). The court in Check `n Go found as follows:
We have concluded that, under the facts of this case, the Attorney General may not compel the production of documents (a) created prior to the date of incorporation of Check `n Go, nor (b) concerning transactions occurring outside the state of Florida, nor (c) concerning ordinary, as opposed to rollover or consecutive transactions. To the extent that the subpoena exceeds these limits, it is overbroad, and may not be enforced.
Id. at 460. We adopt the position of the fifth district with the following modifications:
1) The Attorney General may seek information from appellants' headquarters outside of Florida to the extent that such information relates directly to Florida transactions or to corporate practices implemented in the State of Florida.
2) The Attorney General may seek documents created prior to the dates of appellants' incorporation in the State of Florida to the extent they relate directly to Florida transactions or to corporate practices implemented in the State of Florida.
3) Appellants may seek clarification concerning the definition of "rollover" or "consecutive transactions" upon remand to the trial court.[2]
AFFIRMED in part, REVERSED in part, and REMANDED to the trial court for further proceedings consistent with this opinion.
VAN NORTWICK and BROWNING, JJ., concur.
NOTES
[1] The RICO Act includes usury violations in the definitions of "racketeering activity" and "unlawful debt." See §§ 895.02(1)(a)15 & (2)(a)3, Florida Statutes (2000).
[2] The Attorney General indicated a willingness to provide such a definition during oral argument of this case.