764 So.2d 625 (2000)
Glenn R. CADDY, Appellant,
v.
STATE of Florida, DEPARTMENT OF HEALTH, BOARD OF PSYCHOLOGY, Appellee.
No. 1D99-1108.
District Court of Appeal of Florida, First District.
March 17, 2000.
Rehearing Denied May 30, 2000.
*626 Barry Richard, of Greenberg Traurig, P.A., Tallahassee, for Appellant.
Robert A. Butterworth, Attorney General; Donna Erlich, Assistant Attorney General, Tallahassee, for Appellee.
MINER, J.
Appellant, Glenn R. Caddy (hereafter "appellant" or "Dr. Caddy"), a university professor and forensic psychologist licensed under the laws of Florida timely appeals sanctions imposed upon him by the State Board of Psychology (hereafter "appellee" or "Board") for what the Board termed "sexual misconduct" in the practice of psychology. For the reasons that follow, we reverse and remand with instructions to rescind all sanctions.

THE FACTS
In mid-1986, an attorney representing D.J. in divorce proceedings retained Dr. Caddy to perform a forensic assessment on D.J. relative to a child custody dispute. Dr. Caddy met with D.J. on several occasions, examined the child, considered reports from other psychologists in his office, consulted with D.J.'s attorney, and submitted to a deposition as an expert witness. The extent of Dr. Caddy's professional involvement with D.J. lasted for about one month, and he had no further contact with her on a professional basis after October of 1986.
About nine months later, D.J., now divorced, sought out Dr. Caddy in his office at Nova Southeastern University to ask him questions about some courses she was contemplating taking. The two renewed their acquaintance and, thereafter, commenced a friendly relationship which included sharing lunch or dinner on a few occasions. In September of 1987, nearly a year after appellant had seen D.J. in a professional capacity, their relationship became more intimate, including sexual intimacy. This relationship, which was at times tumultuous, included periods when the two shared a residence and continued over the next six years until they parted company under less than friendly circumstances.
Soon after the break-up, D.J. filed a complaint with the Board against Dr. Caddy. The Board then instituted an investigation which led to proceedings against Dr. Caddy for "sexual misconduct." In answer to the charges, Dr. Caddy admitted that he had seen D.J. professionally in 1986 and that he began a personal relationship with her in 1987. The Board then *627 sought to remove the matter from the administrative law judge assigned to hear the case and go straight to the Board for sanctions because there were no issues of material fact.[1] A hearing was then held at which the Board suspended appellant's license to practice psychology for one year with one year of probation to follow. It is from this final order that Dr. Caddy appeals.

The Statute and the Rule
The Board cited to section 490.0111, Florida Statutes, and Fla. Admin. Code R. 69B19-16.003 for its authority to sanction appellant. Section 490.0111 reads:
Sexual misconduct by any person licensed or certified under this Chapter, in the practice of his profession, is prohibited. Sexual conduct shall be defined by rule.
In 1986, when Dr. Caddy evaluated D.J., the rule in effect read:
The psychologist/client relationship is founded on mutual trust. Sexual misconduct in the practice of psychology means violation of the psychologist/client relationship through which the psychologist uses said relationship to induce or attempt to induce the client to engage, or to engage or attempt to engage the client, in sexual activity outside the scope of the practice or the generally accepted examination or treatment of the client. Sexual misconduct in the practice of psychology is prohibited.
Fla. Admin. Code R. 21U-15.04 (enacted June 23, 1982; amended Dec. 21, 1986).
Within a few months of the forensic assessment performed by Dr. Caddy and several months before the personal relationship began, the Board implemented a new rule which included "other sexual behavior," including kissing. Finally, the new rule defined the duration of a psychologist-client relationship:
For the purposes of determining the existence of sexual misconduct as defined herein, the psychologist-client relationship is deemed to continue in perpetuity.
Fla. Admin. Code R. 69B19-16.003(5)(a).

Proceedings Below and Arguments Raised
At the penalty hearing before the Board, appellant attempted to argue that the perpetuity clause in the rule violates Article I, Section 23 of the Florida Constitution ("Privacy Amendment") because the rule is absolute and permits no exceptions. However, the Board did not hear his arguments, as it was there solely to punish. He contends on appeal that a person has a reasonable expectation to privacy in his sexual relationships and that the Board failed to demonstrate that it had a compelling interest to protect or that it did so using the least-intrusive means. See B.B. v. State, 659 So.2d 256 (Fla.1995). Specifically, he points to the rule governing physicians and psychiatrists as an example of a less-restrictive rule. See Fla. Admin. Code R. 64B8-9.008.[2] Appellant also argues *628 that the rule was an invalid exercise of delegated legislative authority under its new definition in section 120.52(8), Florida Statutes (1997), because the perpetuity rule has no relationship to the grant of authority to define "sexual misconduct." Dr. Caddy asks, "How can a professional relationship be terminated if it is, by rule, deemed to continue forever?"
Below, the Board prevented appellant from raising any of these challenges to the rule, arguing that he was there solely for punishment. On appeal, the Board concedes that appellant has standing to challenge the facial constitutionality of the rule for the first time on appeal. However, it argues that the record is not complete and that appellant's attack is on a portion of the rule that did not apply to his case. It also argues that appellant cannot challenge its exercise of legislative authority for the first time on appeal. On the issues, the Board argues that a psychologist has no reasonable expectation of privacy in the area of sexual involvement with a former client and that he waived certain privacy rights when he chose to seek a professional license. See Fla. Bd. of Bar Examiners Re: Applicant, 443 So.2d 71 (Fla.1983). The Board also argues that B.B. applies only to sexual activity among minors and that the State has a compelling interest in protecting its citizens from sexual misconduct by psychologists. Finally, the Board argues that the rule is in line with the rest of the countrythe dangers of sexual relations between professionals and former patients, particularly professionals with access to the patient's mental processes, are recognized and such relationships are prohibited across the country.

ANALYSIS
In this case, we are presented with a very straightforward rule but a convoluted procedural situation. The record reflects that Dr. Caddy is a highly respected forensic psychologist in South Florida who had a multi-year relationship with a woman he had seen professionally, for a limited purpose, almost a year before the romantic relationship began. As in most cases involving a bitter end to a relationship, there is a lot of "he said-she said" which we find irrelevant to the case at hand. By appellant's own admission, he violated the challenged rule. The question before us is whether these provisions regarding sexual misconduct are valid exercises of law.
We reject the Board's argument that appellant does not have standing to challenge the perpetuity rule under Hensley v. Punta Gorda, 686 So.2d 724 (Fla. 1st DCA 1997), and section 120.68(9), Florida Statutes (1997). We also find it a bit disingenuous that the Board complains about the adequacy of the record after it blocked appellant's attempts to argue the matters before both the administrative law judge and the Board. Furthermore, appellant raised his challenges to the rule in his answer to the original complaint, so he is not barred from raising them here on appeal. See § 120.56(3), Fla. Stat. (1997). The Board was on notice that appellant *629 was challenging the validity of the rule but chose to prevent any discussion of the matter and instead focus solely on punishment. We acknowledge that the lack of a rule-making record puts this court at somewhat of a disadvantage in reviewing the validity of the Board's exercise of legislative authority, and it does not place us in the best position to determine whether the least-intrusive means were employed.

Right to Privacy
In cases involving Florida's right to privacy, the first question, after determining whether there is State action, is whether there is a legitimate expectation of privacy. If there is a reasonable expectation of privacy, then the State must demonstrate that any infringement is done to protect a compelling interest and is done in the least-intrusive manner possible. See, e.g., Winfield v. Division of Pari-Mutuel Wagering, 477 So.2d 544 (Fla. 1985).
First, we find that the rule challenged by Dr. Caddy does, in fact, tread upon the privacy rights of psychologists and their clients. See B.B., supra; see also Jones v. State, 640 So.2d 1084 (Fla. 1994); State v. Cunningham, 712 So.2d 1221 (Fla. 2d DCA 1998). The decisions in the latter two cases rest upon the State's very compelling interest to protect minors from exploitation by an adult, not a lack of expectation of privacy to pursue an amorous relationship. The Board's definition of the privacy interest herea psychologist's expectation of privacy in matters related to his sexual activity with patients is too narrow. However, the privacy interest is not as broad as appellant asserts either. See Shapiro v. State, 696 So.2d 1321 (Fla. 4th DCA 1997) (finding that there was no reasonable expectation of privacy for a psychologist's therapeutic deceptions to convince a current patient to engage in prohibitive sexual conduct with him). Still, we stress that this case involves a relationship that developed after a casual contact initiated by a former client rather than a current patient.
Clearly, the State has a compelling interest in protecting the mental health of its citizens, and there is an obvious power imbalance in the psychologist-patient relationship that involves the most basic mental and emotional characteristics of the patient. Moreover, the State has a compelling interest in protecting the integrity of the medical profession. See Krischer v. McIver, 697 So.2d 97 (Fla.1997).
However, with respect to the second prong of the testwhether the State employed the least intrusive means in protecting its compelling interestwe find merit to appellant's arguments. For physicians and psychiatrists, a former client may be considered a patient "on a case by case basis with consideration given to the nature, extent, and context of the professional relationship between the physician and the person." Fla. Admin. Code R. 64B8-9.008(4). Sexual conduct between a physician and a former patient will constitute misconduct when it "is a result of the exploitation of trust, knowledge, influence or emotions, derived from the professional relationship." Fla. Admin. Code R. 64B8-9.008(6). Clearly, a rule calling for a decision based on the individual facts of a case is less-intrusive than a rule that has an irrebuttable presumption of guilt.
Thus, we accept that, under the facts of the present case, appellant had a legitimate expectation of privacy and that the rule banning sexual conduct between a psychologist and a former client served a compelling state interest. However, we also conclude that the perpetuity clause fails the least-intrusive means test, is on its face over-broad[3] and, for this reason, violates Florida's Privacy Amendment. In view of this disposition, we need not and *630 do not reach appellant's invalid delegation of legislative authority argument.

CONCLUSION
We find that paragraph (5)(a) of Rule 64B19-16.003, is unconstitutional on its face as violative of Article 1, Sec. 23 of the Florida Constitution. Accordingly, we STRIKE paragraph (5)(a) from the rule, REVERSE the order on review, and REMAND to the Board with directions to rescind all sanctions imposed upon appellant and to remit the $3,000.00 assessed against him as both a fine and investigation costs.
BOOTH and KAHN, JJ., CONCUR.
NOTES
[1] Because there was no hearing to determine the facts, numerous issues in the case were not decided. D.J.'s original complaint contained allegations that Dr. Caddy did not simply have a personal relationship with her but also treated her professionally during this time. The record also contains numerous letters in support of Dr. Caddy, some of which contain allegations that D.J. had promised to ruin Dr. Caddy after their relationship ended. However, because there was no hearing, the only facts that went to the Board were appellant's admissions that he performed a forensic assessment on D.J. in October of 1986 and began a personal, sexual relationship with her some time in late-1987.
[2] This rule includes the following:

(4) The determination of when a person is a patient for purposes of this rule is made on a case by case basis with consideration given to the nature, extent, and context of the professional relationship between the physician and the person. The fact that a person is not actively receiving treatment or professional services from a physician is not determinative of this issue. A person is presumed to remain a patient until the patient-physician relationship is terminated.
(5) The mere passage of time since the patient's last visit to the physician is not solely determinative of whether or not the physician-patient relationship has been terminated. Some of the factors considered by the Board in determining whether the physician-patient relationship has terminated include, but are not limited to, the following:
(a) formal termination procedures;
(b) transfer of the patient's case to another physician;
(c) the length of time that has passed since the patient's last visit to the physician;
(d) the length of the professional relationship;
(e) the extent to which the patient has confided personal or private information to the physician;
(f) the nature of the patient's medical problem;
(g) the degree of emotional dependence that the patient has on the physician.
(6) Sexual conduct between a physician and a former patient after termination of the physician-patient relationship will constitute a violation of the Medical Practice Act if the sexual contact is a result of the exploitation of trust, knowledge, influence or emotions, derived from the professional relationship.
[3] We need not discuss the endless scenarios under which this rule would seem even more far-reaching, such as a case with a ten-year gap between a single office visit and a romantic relationship.