816 So.2d 701 (2002)
David Faustino GRABAU, Appellant,
v.
DEPARTMENT OF HEALTH, BOARD OF PSYCHOLOGY, Appellee.
No. 1D00-3027.
District Court of Appeal of Florida, First District.
April 22, 2002.
*702 Vance W. Kidder, Tallahassee, for Appellant.
Simone Marstiller, Tallahassee, for Appellee.
PER CURIAM.
Dr. David Grabau appeals a final order of the Board of Psychology (Board) of the Department of Health (Department) revoking his license to practice psychology and imposing an administrative fine. As grounds for reversal, Dr. Grabau asserts 1) that the final order is based on a deposition erroneously admitted into evidence pursuant to section 90.803(22), Florida Statutes, as amended by chapter 98-2, section 1, Laws of Florida, which Dr. Grabau contends is an unconstitutional statute; 2) that competent substantial evidence does not support the findings that Dr. Grabau's acts constitute sexual misconduct in the practice of psychology as well as the failure to meet acceptable minimum standards of practice; and 3) that he was improperly required to pay an administrative fine. We reverse the final order and remand for further proceedings.

PROCEDURAL BACKGROUND
Before July 1, 1997, the Agency for Health Care Administration (AHCA) was the state agency charged with regulating the practice of psychology. Department, the appellee, is now charged with such regulation and was substituted as a party in this case. § 20.42-.43, Fla. Stat. (2001); chaps. 455 & 490, Fla. Stat. (2001). In mid-1997, ACHA filed an administrative complaint before the Board alleging that on or about April 11, 1995, while employed as the chief psychologist at the Counseling Center for Human Development (located on the campus of the University of South Florida), Dr. Grabau commenced counseling sessions with a female, K.R., and established a psychologist-client relationship with her. Counseling ended on or about August 7, 1995. The client intake summary indicates that the goals were for Dr. Grabau to assist K.R. in stabilizing her depression and clarifying her patterns and needs regarding her career choices and personal relationships. Eventually, a sexual relationship developed between the two and continued until December 1995, when K.R. discovered she was pregnant.
Count One of the complaint alleged that by engaging in a sexual relationship with a client, Dr. Grabau violated section 490.009(2)(q) & .0111, Florida Statutes (1995), and rule 59AA-16.003(2) & (5)(a), Florida Administrative Code, which proscribe "sexual misconduct." Count Two alleged that Dr. Grabau violated section *703 490.009(2)(k), Florida Statutes (1995), by committing any act upon a patient or client that would constitute sexual battery or sexual misconduct as defined in section 490.0111, Florida Statutes. Count Three alleged that Dr. Grabau violated section 490.009(2)(s), Florida Statutes (1995), by failing to meet the minimum standards of performance in professional activities when measured against generally prevailing peer performance, including "the undertaking of activities for which the licensee is not qualified by training or experience." Dr. Grabau contested the allegations.
On October 16, 1996, during the course of K.R.'s federal civil lawsuit against Dr. Grabau and the Florida Board of Regents, K.R.'s videotaped deposition (taken by counsel for Dr. Grabau) was begun, was scheduled to be continued at another date at the request of Dr. Grabau's lawyer, but was never completed because the civil lawsuit was settled. In February 1999, citing section 90.803(22), Florida Statutes, Department moved to introduce into evidence K.R.'s deposition, in lieu of her live testimony, in administrative proceedings. The affidavit of the attorney who had represented K.R. at the 1996 deposition indicated that K.R. would refuse to testify live, even if called, because of the perceived severe psychological impact of her remembering the events at issue. Having been held in abeyance, the administrative disciplinary proceedings were reactivated in October 1999, and the administrative law judge (ALJ) granted the motion to use K.R.'s deposition. Dr. Grabau's appointed qualified representative complained that the deposition was incomplete, that Dr. Grabau never had the opportunity to cross-examine K.R., and that section 90.803(22) as amended was inapplicable because it became effective after the disciplinary proceedings began. The representative advised the ALJ that Dr. Grabau had tried unsuccessfully to locate K.R. and to take her deposition in the administrative disciplinary proceeding.
The ALJ ruled, first, that section 90.803(22) applied as the procedural rule in effect at the time of the hearing. Second, the ALJ found that Dr. Grabau had been afforded an opportunity to cross-examine K.R., inasmuch as his attorney deposed her for eight hours before the deposition was scheduled to be continued during the prior civil litigation. After reconsideration of the arguments pro and con, the ALJ admitted K.R.'s videotaped deposition as well as the corresponding written transcript. Over Dr. Grabau's objection, the ALJ also admitted into evidence the January 7, 2000, deposition of Dr. George Rock-well, Jr., who was recognized as an expert in general psychology. The ALJ also admitted into evidence K.R.'s patient record.

ALJ's RECOMMENDED ORDER
In his findings of fact, the ALJ found that Dr. Grabau was employed as a licensed psychologist at the U.S.F. Counseling Center for Human Development during the period April 11, 1995August 7, 1995. In that capacity, Dr. Grabau saw K.R. on several occasions and established a psychologist-client relationship with her. During the initial intake evaluation at his office, Dr. Grabau defined the goals of his continued treatment as follows: to assist K.R. in stabilizing her depression, and to clarify her needs and patterns regarding her career and relationships. On completing the intake procedures, Dr. Grabau referred himself to K.R. as her treating therapist. Between their initial meeting and the end of August 1995, Dr. Grabau and K.R. met approximately 13 times. Dr. Grabau's session notes disclose that they discussed K.R.'s relationships with men generally, her relationship with her parents, and her ability to deal with her emotions, her anxiety, and her depression.
*704 K.R. related that during many of their sessions, Dr. Grabau told her she had nice legs and was very sexy. He talked to her about his personal life, including his dissatisfaction with his marriage. It appears that, at some point, he also met with K.R. outside his professional office on a purely social basis. According to K.R., Dr. Grabau told her not to tell anyone about their friendship outside the clinic. The relationship culminated in their engaging in sexual intercourse resulting in her pregnancy, which was aborted. As a result of their relationship, K.R. filed a complaint against Dr. Grabau with the Board alleging the sexual nature of their relationship.
ACHA deposed Dr. Rockwell, a retired psychologist with a specialty in school psychology, who never met Dr. Grabau or spoke to him in any capacity. From his review of the file regarding the allegations against Dr. Grabau, Dr. Rockwell concluded that a psychologist-patient relationship had been established with K.R. The expert opined that such a relationship involves trust and the patient's belief that the psychologist has the skills and knowledge to assist the patient in dealing with her or his problems. The patient develops the ability to talk to a non-critical, nonjudgmental person in an effort to help her or him deal with the problems or concerns at hand. A psychologist has the responsibility to create an emotionally safe environment for the patient, who often is made vulnerable by the need to share sensitive matters. Dr. Rockwell opined it is unlikely a patient will work with a psychologist and not form a special relationship. This special relationship places certain responsibilities upon the psychologist toward the patient, including abiding by the laws and rules relating to the practice of psychology, having respect for the patient, and keeping all matters confided by the patient confidential. Additionally, the psychologist has the responsibility to comport himself or herself in a manner that will maintain a professional relationship and distance vis-a-vis the patient. Sexual relationships between a psychologist and a patient normally are prohibited as being beyond the boundaries that should not be crossed, and it is the psychologist's responsibility to set the limits on behavior so as to prevent an inappropriate relationship from developing. This applies even if the patient initiates sexual advances. These advances would not excuse the psychologist from professional responsibility toward the patient. If the psychologist detects what appear to be inappropriate sexual advances from the patient, there is a duty to discuss this with the patient, to talk about the nature of the psychologist-patient relationship, and to explain that such a relationship is inappropriate. The constrictors on the profession are even more specific where the psychologist finds himself or herself sexually attracted to the patient. In such instances, the psychologist not only must refrain from acting on those feelings, but also should evaluate the situation to ensure that those feelings are in no way interfering with the therapeutic relationship. Dr. Rockwell could envision no situation in which it would be appropriate for a therapist to engage in sexual relations with a patient, either during or after the termination of the therapy session. Inappropriate sexual contact between a therapist and a patient can have severe and deleterious effects on the patient. These effects can include feelings of guilt and depression based on the patient's belief that the inappropriate behavior was her or his fault. The patient also might feel embarrassment and reluctance to undergo further treatment. Most likely, the patient would lose trust in the particular therapist and, perhaps, in other potential therapists.
Notwithstanding Dr. Grabau's contention that he had seen K.R. solely for career *705 counseling and that he never entered a psychologist-patient relationship with her, Dr. Rockwell concluded that Dr. Grabau's clinical notes regarding K.R. clearly indicate the formation of a professional psychologist-patient relationship. From an independent review of the record, the ALJ reached the same conclusion as Dr. Rockwell on this issue. Even assuming that Dr. Grabau had limited his counseling of K.R. solely to career matters, the ALJ found that such conduct is covered by the standards of the profession. Dr. Rockwell was convinced that Dr. Grabau's alleged conduct toward K.R. constitutes sexual misconduct in the practice of psychological counseling falling below the minimum standards of performance and professional activities when measured against generally prevailing peer performance. The ALJ adopted the expert's finding.
In his conclusions of law, the ALJ found that the burden of proof in the administrative proceedings rested with Department, as the petitioner, which had to establish Dr. Grabau's guilt by clear and convincing evidence. Department of Banking & Finance v. Osborne Stern & Co., 670 So.2d 932 (Fla.1996). Section 490.011, Florida Statutes, states that sexual misconduct in the practice of his or her profession by any person licensed under chapter 490 is prohibited. The pertinent rule defines sexual misconduct by a psychologist involved in a psychologist-patient relationship as follows:
Engag[ing], or offer[ing] to engage that client in sexual intercourse or other sexual behavior. Sexual behavior includes, but is not limited to, kissing, or touching by either the psychologist or the client of the other's breasts or genitals.
Rule 59AA-16.003(2), Fla. Admin. Code.
The ALJ found that no evidence was presented to diminish the credibility of K.R.'s deposition testimony, including the evidence that she and Dr. Grabau had engaged in sexual intercourse, as a result of which she became pregnant. The ALJ found this misconduct occurred while K.R. was a client of Dr. Grabau, who had established a psychologist-client relationship. As such, his participation in this sexual activity, even with K.R.'s consent, was deemed sexual misconduct in the practice of psychology. As a part of Conclusion of Law 19, the ALJ found: "The psychologist/client relationship, once established, is deemed to continue in perpetuity for the purposes of determining the existence of sexual misconduct."
Additionally, the evidence presented by Department was found to constitute a violation of section 490.009(2)(k), Florida Statutes, which states as a ground for discipline a psychologist's commission of any act upon a patient or client that would constitute sexual battery or would constitute sexual misconduct, as defined in section 490.0111, Florida Statutes.
Dr. Rockwell opined that Dr. Grabau's actions regarding K.R. fall well below a minimum standard of performance. The expert's testimony was not controverted by any credible evidence to the contrary. Accordingly, the ALJ concluded that clear and convincing evidence demonstrates that Dr. Grabau failed to meet acceptable minimum standards of practice, thereby raising a ground for discipline pursuant to section 490.009(2)(s), Florida Statutes.
The ALJ rejected the argument of Dr. Grabau's representative that K.R.'s nonappearance at the hearing prevented Dr. Grabau from confronting his accuser and from demonstrating K.R.'s confusion and lack of precision regarding her recollection of the salient events. Noting that K.R.'s deposition had been taken in a prior proceeding, the ALJ found that Dr. Grabau was in no way precluded from questioning any facet of K.R.'s testimony or testing *706 her ability to remember the material facts of the situation. Also, the fact that Dr. Grabau did not appear at the hearing was deemed to have no bearing in the evaluation of the evidence presented by both parties.
As to any suggestion that Dr. Grabau is somehow released from the consequences of his acts by the possibility that K.R.'s actions toward him were flirtatious or suggestive, the ALJ noted there is a presumption that a client is incapable of giving valid, informed, and free consent to sexual activity involving the psychologist. Rule 59AA-16.003(1), Fla. Admin. Code. The assertion of a client's consent does not constitute a valid defense against charges of sexual misconduct.
Having found Dr. Grabau guilty of the matters alleged in the administrative complaint, the ALJ addressed the issue of an appropriate penalty. Rule 64B19-17.002(1), Florida Administrative Code, authorizes an administrative fine of $1,000.00 for each of the three offenses established. The rule also authorizes revocation of the professional license for each of the offenses alleging sexual misconduct or sexual battery, and suspension of the license upon a showing of performance below minimum standards when measured against prevailing peer performance.
The ALJ found that Dr. Grabau's "egregious and reprehensible" misconduct warrants his removal from the counseling profession. Given that conclusion, the ALJ found that "[a] major administrative fine would serve little purpose." Accordingly, the ALJ recommended that the Board enter a final order finding Dr. Grabau guilty of all three counts of the administrative complaint and revoking his license to practice psychology in the State of Florida.

THE BOARD'S FINAL ORDER
After Dr. Grabau filed exceptions to the recommended order, the Board held a duly-noticed public meeting to consider the order. Neither Dr. Grabau nor his representative appeared at the meeting. The Board rejected all the objections raised in the exceptions. Finding competent substantial evidence, the Board approved, adopted, and incorporated the ALJ's material factual findings set forth in the recommended order. All but one of the conclusions of law were found reasonable and consistent with law and, thus, were approved, adopted, and incorporated into the final order. The portion of Conclusion of Law 19 finding that, once established, the psychologist-client relationship is deemed to continue in perpetuity for the purpose of determining the existence of sexual misconduct was rejected on the authority of the recent decision in Caddy v. Department of Health, 764 So.2d 625 (Fla. 1st DCA 2000) (holding that rule deeming psychologist-client relationship to continue in perpetuity, in context of prohibition against sexual relationships between psychologist and client, was not least intrusive means of defending State's compelling interest in protecting its citizens' mental health and, thus, was a facially unconstitutional infringement on right of privacy).
The Board ordered and adjudged the revocation of Dr. Grabau's license to practice psychology and imposed an administrative fine of $1,000.00 for each of the three established offenses.

WHETHER SECTION 90.803(22), AS AMENDED, IS CONSTITUTIONAL
It is clear from the ALJ's recommended order that the findings of fact and conclusions of law are based, in significant part, on the deposition testimony of K.R. given in the prior federal civil lawsuit. The first issue raised in this appeal is whether or not the amended statute, pursuant to which K.R.'s deposition was admitted into evidence, is constitutional. The facial unconstitutionality *707 of a statute may be raised in a district court of appeal on direct review under section 120.68, Florida Statutes, after an aggrieved party completes the administrative process. Key Haven Associated Enterprises, Inc. v. Board of Trustees of Internal Improvement Trust Fund, 427 So.2d 153, 157 (Fla.1982).
The previous version of this statute stated that the following was not inadmissible as evidence, even though the declarant was available as a witness:
(22) FORMER TESTIMONY.Former testimony given by the declarant at a civil trial, when used in a retrial of said trial involving identical parties and the same facts.
§ 90.803(22), Fla. Stat. (1997). The amended provision states that the following is not inadmissible as evidence, even though the declarant is available as a witness:
(22) FORMER TESTIMONY.Former testimony given by the declarant which testimony was given as a witness at another hearing of the same or a different proceeding, or in a deposition taken in compliance with law in the course of the same or another proceeding, if the party against whom the testimony is now offered, or, in a civil action or proceeding, a predecessor in interest, or a person with a similar interest, had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination; provided, however, the court finds that the testimony is not inadmissible pursuant to s. 90.402 [stating that "[a]ll relevant evidence is admissible, except as provided by law"] or s. 90.403 [stating in pertinent part that "[r]elevant evidence is inadmissible if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of issues, misleading the jury, or needless presentation of cumulative evidence"].
Ch. 98-2, § 1, Laws of Fla.
Dr. Grabau contends that this statutory provision, as amended, is unconstitutional because it allows the introduction into evidence of a deposition without a required showing of "unavailability," contrary to the requirements of section 90.804, Florida Statutes; and Florida Rule of Civil Procedure 1.330(a)(3); and, thus, violates article V, section (2)(a) (which empowers the Florida Supreme Court to adopt rules for the practice and procedure in all courts and specifies that the Legislature may not repeal any of the rules adopted by the Court except by a 2/3 vote); and article II, section 3, of the Florida Constitution (which establishes three branches of government in the State of Florida and proscribes one branch from exercising the authority pertaining to either of the other branches except as expressly provided in the constitution).
Chapter 98-2, section 1, inter alia, was examined by the Florida Supreme Court in 2000 when it considered the quadrennial report of The Florida Bar Code and Rules of Evidence Committee (Committee) concerning amendments to the Florida Evidence Code that were made by the Legislature over the previous four years. In re Amendments to the Florida Evidence Code, 782 So.2d 339 (Fla.2000). The Committee recommended against the adoption of chapter 98-2, section 1, and the Board of Governors unanimously approved this recommendation. Id. at 339-40. In effect, chapter 98-2, section 1, replaced the narrow hearsay exception for "former testimony" in section 90.803, Florida Statutes, which applies irrespective of a declarant's availability to testify, with the significantly broader "former testimony" exception in section 90.804(2)(a), Florida Statutes, which applies only when the declarant is *708 unavailable. Id. at 340 & n. 2; § 90.804(1), Fla. Stat. (2001) (stating that a declarant is "unavailable" when she or he does not have to testify due to a privilege, refuses to testify, or cannot testify due to death, illness, or a lack of memory).
The amendment has a tortuous history. The bill that ultimately became chapter 98-2, section 1, was originally passed by the Legislature in 1997. See Fla. S. Jour. 1242 (Reg.Sess.1997); Fla. H. Jour. 1754 (Reg.Sess.1997). However, the bill as passed was vetoed by then-Governor Chiles, whose veto message expressed concerns because the bill "creates an openended exception" that "reduces a party's ability to confront and question a witness" and "precludes the right of a litigant to cross-examine witnesses at trial." In re Amendments, 782 So.2d at 341, quoting Veto of Fla. CS for HB 1597 (1997) (letter from Gov. Chiles to then-Sec'y of State Sandra B. Mortham, May 29, 1997) (on file with Sec'y of State, The Capitol, Tallahassee, Fla.). The Governor's veto was over-riden during the 1998 regular legislative session. See Fla. H. Jour. 119 (Reg.Sess. 1998); Fla. S. Jour. 148 (Reg.Sess.1998). Reviewing the "override amendment," the supreme court noted that the Committee, as well as those who filed comments in opposition to the changed provision, had voiced numerous concerns consistent with Governor Chiles' reservations. The court stated:
The reasons offered for not adopting the amendment include such things as: (1) the amendment violates a defendant's constitutional right to confront adverse witnesses; (2) this expanded former-testimony hearsay exception would result in "trial by deposition," thereby precluding the fact-finder from evaluating witness credibility; (3) the amendment simply strips the section 90.804(2)(a) former-testimony exception of its "unavailability" requirement, thereby making the section 90.804 exception obsolete; (4) the amendment is inconsistent with several rules of procedure, thereby causing confusion as to which rule should control; [footnote omitted] and (5) the expanded hearsay exception will shift expense burdens relating to the introduction of evidence from the proponent of the testimony to the party against whom the testimony is being offered who will have to call witnesses in order to challenge the testimony. The majority of those who filed comments asked us to declare chapter 98-2, section 1 procedural in nature and refuse to adopt it because of the above listed concerns.
Id. Furthermore, acknowledging "the grave concerns about the constitutionality of the amendment," the supreme court declined to adopt chapter 98-2, section 1, "to the extent it may be procedural." Id. at 341-42. The court expressly "decline[d] to address the substantive/procedural issue until such time as the issue comes before the Court in a true `case or controversy,' because to do otherwise would effectively pass on the constitutionality of the legislation itself." Id. at 341. The court based its decision not to adopt the amendment also "on the inescapable conclusion that this amendment, which as drafted would appear to apply to both civil and criminal proceedings, is an unacceptable change to a long-standing rule of evidence." Id. at 342. Distinguishing the hearsay rule exceptions it had adopted at the inception of the Florida Evidence Code to the extent they were procedural, the court concluded that chapter 98-2, section 1, is broader than any other jurisdiction's "former testimony" exception to the hearsay rule and is neither "based on well established law" nor "modeled after the Federal Rules of Evidence." Id.; Charles W. Ehrhardt, Florida Evidence § 802.1 (2000 ed.). Justice *709 Lewis urged the court to find the amendment "an unacceptable `rule of procedure.'" Id. at 342 (Lewis, J., specially concurring).
One aspect of due process is the privilege of a party to view and crossexamine a witness. Finkley v. Lathing, 120 So.2d 9 (Fla.1960). Dr. Grabau argued below that the amended statute deprived him of the opportunity to confront K.R. at the hearing and to cross-examine her, in that K.R.'s deposition is incomplete and was taken to discover matters that were relevant to the federal civil lawsuit wherein he and the Florida Board of Regents were defendants. Over an objection, the ALJ allowed the introduction of K.R.'s deposition into evidence based on section 90.803(22), Florida Statutes, which the ALJ deemed procedural; and on the finding that Dr. Grabau had deposed her. We conclude that the very same matters that concerned the Florida Supreme Court in declining to adopt this statute, as amended, exist in the instant case. Dr. Grabau had a hearing by deposition only and was denied the right to confront K.R. at a hearing. Her deposition was used against him without a showing of K.R.'s unavailability. The incomplete deposition did not reveal the particulars and specific time frames relating to the sexual relationship between Dr. Grabau and K.R. Significantly, it is unclear exactly when the sexual relationship occurred vis-a-vis the period during which he counseled her. When the alleged indiscretions occurred, the applicable rule was that a psychologist-client relationship existed in perpetuity. During the period when the deposition was begun, this rule remained intact, so that whether or not the sexual relationship began before the counseling ended was immaterial. Subsequently, however, the perpetuity rule was declared invalid in Caddy, 764 So.2d at 629-30, thereby making the determination of a violation of sexual misconduct more fact-specific, especially regarding the timing of such acts. It is obvious from the record that the ALJ based his finding in the recommended order on the invalid former rule. Although the ALJ's reference to the invalid rule was stricken pursuant to the final order, that does not mitigate the prejudice to Dr. Grabau arising from the former fact determination that was based on the invalid rule. The discovery of certain critical matters was not obtained during the incomplete deposition, and the federal lawsuit was settled before the deposition could be rescheduled and completed as originally planned.
We have carefully considered the numerous grave concerns about the constitutionality of section 90.803(22), Florida Statutes, as amended, as set forth by the opponents of the provision and acknowledged by the Florida Supreme Court. In re Amendments, 782 So.2d at 339. We conclude that the amended statute is unconstitutional as an infringement on the authority conferred on the Florida Supreme Court by article V, section 2(a), of the Florida Constitution; and as a violation of article II, section 3, of the Florida Constitution, because it obviates and conflicts with section 90.804, Florida Statutes; and with Florida Rule of Civil Procedure 1.330; and denies due process. Therefore, the statutory provision is not a proper basis for the admission into evidence of K.R.'s deposition in the administrative proceeding below. We certify the following to the Florida Supreme Court as a question of great public importance:
IS SECTION 90.803(22), FLORIDA STATUTES, AS AMENDED IN CHAPTER 98-2, SECTION 1, UNCONSTITUTIONAL AS A VIOLATION OF ARTICLE V, § (2)(a), AND ARTICLE II, § 3, FLORIDA CONSTITUTION?

*710 WHETHER SECTION 90.804(2)(a) APPLIES

As an alternative ground, Department contends that K.R.'s deposition is admissible into evidence based on section 90.804(2)(a), Florida Statutes (applicable where "the declarant is unavailable as a witness"); and rule 1.330(a)(3). Florida Rules of Civil Procedure 1.300 & 1.310 authorize the taking of a person's deposition by oral examination before a court reporter. As the purpose of taking a deposition is to discover matters that are relevant to a pending action and to prepare for trial, Fla. R. Civ. P. 1.280, it follows that an incomplete deposition that does not include testimony on critical matters at issue precludes full and adequate preparation for trial. In certain limited circumstances, all or part of a deposition may be introduced into evidence in a hearing or trial of an action. To the extent pertinent to the instant issues, these limited circumstances generally can be grouped under the heading "witness unavailability." Fla. R. Civ. P. 1.330(a)(3). Given the success of its request to admit K.R.'s deposition into evidence based on section 90.803(22), Florida Statutes, Department did not seek to introduce the deposition based on the alternative ground of rule 1.330(a)(3). Because the issues of "unavailability" under section 90.804(2)(a) and rule 1.330(a)(3), and other factors governing the admissibility of the partial deposition, have not been fully addressed below, we decline to review the question for the first time on appeal. We note, however, that if K.R.'s deposition is found admissible under section 90.804(2)(a) and rule 1.330(a)(3), then the record evidence is sufficient to prove the violations. Although the deposition might be admissible under section 120.569(2)(g), it is nevertheless hearsay evidence unless it would be admissible in a civil action. Because the deposition is the only evidence of Dr. Grabau's inappropriate behavior, there is an absence of competent substantial evidence to support the order under review unless the deposition would be admissible in a civil action pursuant to a recognized hearsay exception. See § 120.57(1)(c), Fla. Stat. (2001).

CONCLUSIONS
We REVERSE the final order AND REMAND to the Board, with directions to remand the case to the ALJ for further proceedings consistent with this opinion.
ALLEN, C.J.; VAN NORTWICK and BROWNING, JJ., concur.