922 So.2d 1041 (2006)
Karlin DANIEL, Appellant,
v.
Barbara DANIEL, Appellee.
No. 4D04-2617.
District Court of Appeal of Florida, Fourth District.
March 8, 2006.
*1042 Cynthia L. Greene of Law Offices of Greene, Smith & Associates, P.A., Miami, and Law Offices of Steger & Steger, P.A., Stuart, for appellant.
Martin L. Haines, III of Martin L. Haines, III, Chartered, Lake Park, and Karen L. Johnson of Karen L. Johnson, P.A., Stuart, for appellee.
GROSS, J.
The issue in this case is whether the trial court lawfully ordered the husband to file a financial affidavit in this non-simplified dissolution proceeding. We hold that the Family Law Rules of Procedure require the husband to file an affidavit and reject his argument that the order to do so violates his right of privacy.
The husband and wife married in April, 1986 and separated in May, 2002. They had no children. In December, 2003, the wife filed a petition for dissolution of marriage; she requested alimony and equitable distribution of marital assets and liabilities. With the petition, she filed her family law financial affidavit.
The parties attended a mediation on February 13, 2004. The mediation produced an agreement "intended to be a full, final and binding settlement of all issues" in the case. The agreement provided that 1) the husband would pay the wife $150,000 in lump sum alimony on or before May 15, 2004; 2) the husband would pay $16,850 directly to the wife in equitable distribution on February 14, 2004; 3) there had "been full and complete disclosure of all marital assets and liabilities"; 4) the agreed valuation date for assets was May, 2002; and 5) except as set forth in the agreement, neither party would be "entitled to claim alimony from [the other] in any form either now or in the future."
On February 17, 2004, the court entered an order approving the mediation agreement.
On February 18, the wife moved to set aside the mediation agreement. The basis *1043 for her motion was her ignorance of the value of the marital home, that the husband had failed to disclose the value of jointly owned properties, and that there had been no "full and frank disclosure" of assets because the husband had not filed a financial affidavit "as required under Family Law Rules of Procedure." The wife also moved to stay the entry of a final judgment pending the outcome of her request to set aside the mediation agreement. On March 16, the wife filed a second motion to set aside the mediation agreement, adding the ground that the mediation left her "physically and emotionally exhausted" and making the legal argument that a financial affidavit was mandatory because the mediation agreement contemplated "permanent financial relief."
On March 25, 2004, the husband and wife entered into a stipulation where the wife withdrew her motions seeking to set aside the mediation agreement and stipulated that the agreement should be incorporated into a final judgment of dissolution.
At the hearing concerning entry of a final judgment, the wife's attorney requested that the court require the husband to file a financial affidavit. The husband's lawyer objected, asserting the same arguments raised in this appeal. Ultimately, the circuit court ordered the husband to file a financial affidavit.
The husband has appealed the order requiring the filing of a financial affidavit primarily raising two grounds: (1) that the order violates his right to privacy under Article I, Section 23 of the Florida Constitution, and (2) that the circuit court erred by failing to follow Salczman v. Joquiel, 776 So.2d 986 (Fla. 3d DCA 2001), and Varrieur v. Varrieur, 775 So.2d 361 (Fla. 3d DCA 2000).
Addressing the second argument first, the Family Law Rules of Procedure required the husband to file a financial affidavit in this case. The wife's 2003 petition for dissolution sought alimony and equitable distribution of assets and liabilities. It was thus a "proceeding for an initial . . . request for permanent financial relief" within the meaning of Florida Family Law Rule of Procedure 12.285(d). Rule 12.285(d)(1) requires the filing of a financial affidavit, a "requirement [that] cannot be waived by the parties." The rule leaves no room for doubt that the filing of a financial affidavit is both mandatory and non-waivable by the parties. In addition to the language of subsection (d)(1), rule 12.285(a)(1) provides that any portion of the rule may be modified by agreement of the parties, "[e]xcept for the provisions as to financial affidavits. . . ."
Neither Salczman nor Varrieur change the mandatory requirement of a financial affidavit in cases subject to rule 12.285(d)(1).
Varrieur was a case where the husband filed a simplified dissolution petition under rule 12.105. The couple divided all of their real property and marital assets and signed a partnership agreement. 775 So.2d at 362. The trial court entered a final judgment of dissolution after the wife testified that she had not been coerced and that the marital property had been divided. Id. Neither party objected to the settlement, nor filed financial affidavits. In response to the wife's attempt to set aside the final judgment for failure of the court to require financial affidavits, the third district held that financial affidavits may be waived in simplified dissolution proceedings under rule 12.105. Id. at 363.
Varrieur does not control this case, which did not involve a simplified dissolution.[1] *1044 The wife did not file the case as a simplified dissolution. At the time the petition was filed, the parties had not yet reached "a satisfactory division of their property" or "agreed as to payment of their joint obligations" as required by rule 12.105(a)(2).
Salczman is also distinguishable. That case involved a three-year, second marriage. 776 So.2d at 987. The wife filed a dissolution petition stating that the terms of an antenuptial agreement should be fully enforced; "[s]he sought no financial support or relief from the former husband." Id. Although the husband's answer sought equitable distribution of a bank account and an automobile, the parties "amicably disposed" of those assets "pursuant to the terms of the antenuptial agreement prior to the final hearing." Id. Both parties appealed the trial judge's order requiring that they file financial affidavits. The third district held that the proceeding did not involve a "request for permanent financial relief" under the rule and reversed the order requiring the filing of financial affidavits. Id. at 988.
This case differs from Salczman in three important ways. First, this case involved a 16-year marriage with no antenuptial agreement, not a three-year, second marriage with such an agreement. Second, the wife's petition here sought "permanent financial relief" under rule 12.285. Third, the wife objected to the husband's attempt to avoid filing a financial affidavit, so there was no agreement between the parties as in Salczman. The parties' adherence to the antenuptial agreement made the situation in Salczman akin to a simplified dissolution.
Having concluded that rule 12.285 requires the husband to file a financial affidavit, we next address his contention that application of the rule in this case violates his right to privacy under the Florida Constitution.
Florida's right of privacy under article I, section 23 "protects Florida's citizens from the government's uninvited . . . interference in those areas that fall within the ambit of the zone of privacy afforded under this provision." City of N. Miami v. Kurtz, 653 So.2d 1025, 1027 (Fla.1995). The amendment was "intended to protect the right to determine whether or not sensitive information about oneself will be disclosed to others." Rasmussen v. S. Fla. Blood Serv., Inc., 500 So.2d 533, 536 (Fla.1987). "The right of privacy does not confer a complete immunity from governmental regulation and will yield to compelling governmental interests." Winfield v. Div. of Pari-Mutuel Wagering, 477 So.2d 544, 547 (Fla.1985).
Beginning with Winfield, the supreme court has adopted a test to assess the claim of an article I, section 23 privacy violation:
Courts must first determine whether the individual possesses a legitimate expectation of privacy in the information or subject at issue. If so, then the burden shifts to the State to show that (a) there is a compelling state interest warranting the intrusion into the individual's privacy and (b) the intrusion is accomplished by the least intrusive means. Legislation that infringes on the right to privacy will be invalidated unless it can survive the compelling state interest test.
Thomas v. Smith, 882 So.2d 1037, 1044 (Fla. 2d DCA 2004) (internal citation omitted); *1045 see N. Fla. Women's Health & Counseling Servs., Inc. v. State, 866 So.2d 612, 620 (Fla.2003) (court reaffirmed the applicability of the compelling state interest test in article I, section 23 cases).
"Determining whether an individual has a legitimate expectation of privacy in a given case must be made by considering all the circumstances, especially objective manifestations of that expectation." State v. Conforti, 688 So.2d 350, 357-58 (Fla. 4th DCA 1997) (quoting Stall v. State, 570 So.2d 257, 260 (Fla.1990)). "Although a person's subjective expectation of privacy is one consideration in deciding whether a constitutional zone of privacy exists, the final determination of an expectation's legitimacy takes a more global view, placing the individual in the context of a society and the values that the society seeks to foster." Conforti, 688 So.2d at 358-59. A protected expectation of privacy is one that society is prepared to consider as reasonable.
Crucial to the decision in this case is that the court's order arose in a dissolution proceeding involving a request for permanent financial relief. "Since marriage is of vital interest to society and the state, it has frequently been said that in every divorce suit the state is a third party whose interests take precedence over the private interests of the spouses." Posner v. Posner, 233 So.2d 381, 383 (Fla.1970); Wall v. Wall, 134 So.2d 288, 289 (Fla. 2d DCA 1961). A financial affidavit is central to the job of a court trying to do justice in a divorce case. The property divisions made and obligations imposed by a final decree turn on the financial condition of the parties. A court cannot do the right thing without sufficient information about the parties' finances.
It is not unusual for a settled family case to reappear before the court on the claim that the settlement was procured by fraud. The special treatment reserved for post-dissolution fraud claims demonstrates the importance of the financial affidavit to the family law process. Even though the law values finality of judgments, the filing of a fraudulent financial affidavit justifies relief under Florida Rule of Civil Procedure 1.540(b), without the one-year time limit that can apply to such motions. See Fla. Fam. L.R.P. 12.540. While evidence of a person's financial condition may be drawn from a multitude of documents, a financial affidavit is a party's formal, sworn position that reduces finances to a manageable chunk of information. The affidavit becomes "ground zero" for any request for post-judgment relief that comes before the court.
A financial affidavit is filed for the benefit of the court and the opposing party in the dissolution. Decisions on whether and how to settle a case depend on full, honest financial disclosure. The financial affidavit is at the center of the system established by the Family Law Rules to resolve the issues that arise in family cases. Those rules address the valid privacy concern that information not be disseminated beyond the parties and judge; rule 12.400(c) provides for the conditional sealing of financial information "if it is likely that access to the information would subject a party to abuse, such as the use of the information by third parties for purposes unrelated to government or judicial accountability or to first amendment rights."
For these reasons, the husband's expectation that he may avoid filing a financial affidavit in this divorce proceeding is not one that society is prepared to consider as reasonable. Florida's right of privacy is not implicated in this case.
We affirm the order of the circuit court and modify the court's order to reflect its oral ruling at the April 1, 2004 hearing. In his affidavit, the husband shall use values *1046 as of the date of the February, 2004 mediation agreement; if he cannot provide values as of that date, he may rely upon appraisals from May, 2002, so long as he indicates on the affidavit the different date of valuation and the basis of the valuation.
MAY, J., and IMPERATO, CYNTHIA G., Associate Judge, concur.
NOTES
[1] Because this case did not involve a simplified dissolution, we do not reach the issue of whether Varrieur was correctly decided given the language of Rule 12.105(c), indicating that the "parties must each file a financial affidavit." (Emphasis added).