NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

SONDRA HESS,                          )
                                      )
            Appellant,                )
                                      )
v.                                    )        Case No. 2D18-3155
                                      )
CHAD HESS,                            )
                                      )
            Appellee.                 )
_____  )

Opinion filed October 11, 2019.

Appeal from the Circuit Court for
Hillsborough County; Chet A. Tharpe,
Judge.

Theodore J. Rechel and Deborah M.
Schmitt of Rechel & Associates, P.A.,
Tampa, for Appellant.

Mark A. Neumaier, Tampa, for Appellee.


SMITH, Judge.

        Sondra Hess, the former wife, appeals a final judgment of dissolution of

marriage and the denial of her motion to set aside a marital settlement agreement

based upon the former husband's failure to disclose income in the form of disability

benefits on his financial affidavit.  The trial court erred in commenting, prior to receiving

any evidence, that there was no fraud or misrepresentation and later relying upon these same comments as findings supporting its oral ruling denying the motion. Therefore, we reverse and remand for a new evidentiary hearing on the merits of the former wife's motion and otherwise affirm the final judgment of dissolution of marriage.

I

The parties married in September 1998 but by 2013 had begun living apart in different states. After years of separation, on April 27, 2017, the former husband filed a petition for dissolution of marriage. The facts following the filing of the petition and leading up to mediation were uncontentious and uneventful. The former wife filed her answer to the petition. Early mediation was scheduled soon after the trial court issued its standard order referring the parties to mediation. Both parties were represented by counsel throughout the dissolution proceedings.

In advance of the mediation, the parties exchanged mandatory financial disclosures under Florida Family Law Rule of Procedure 12.285, which included the filing of their respective financial affidavits in conformity with Florida Family Law Rules of Procedure Form 12.902(c). Neither party conducted any discovery prior to the mediation.[1] On September 29, 2017, the parties reached a resolution at the mediation and entered into a marital settlement agreement (MSA).

The MSA addressed the parties' financial disclosures and provided the following representation in paragraph twenty-five:

_____

[1]The record is silent as to whether the parties entered into a stipulation to stay discovery before the mediation.

- 2 -

Each party acknowledges and agrees that he or she does not desire any additional discovery or valuation of the assets, liabilities, income and financial condition of the other party, and that each has made a full disclosure to the other of his or her known assets and liabilities, income and expenses, and current financial condition.[2]

The former husband's financial affidavit showed he was retired from the military, received a pension, and was then employed full-time as a contractor. As far as "contingent assets and liabilities," the former husband left this section blank on the Form.[3] The former husband disclosed $0 of gross income in disability benefits.

Pursuant to the terms of the MSA, the parties agreed the former wife would receive monthly durational alimony. As far as equitable distribution, the parties agreed the former wife would receive, among other effects, monthly payments equal to 34.43% of the former husband's military pension, which was estimated to be approximately $1600 per month based upon a chart provided by the former husband's counsel at the mediation. The former husband's first payment under the MSA was due in early October 2017. A final uncontested dissolution hearing for the purpose of the court adopting the MSA was then scheduled for December 18, 2017.

_____

[2]The court finds no merit in the former husband's argument that paragraph twenty-five waived the former wife's right to challenge the MSA because the former husband failed to fully disclose his financial condition. See, e.g., Marjon v. Lane, 995 So. 2d 1086, 1087-88 (Fla. 2d DCA 2008) (holding party was entitled to evidentiary hearing on the merits of motion to set aside marital settlement agreement based upon fraud notwithstanding provision in agreement stating "no duress, undue influence, fraud or overreaching has been utilized by any party").

[3]Section III.D. of Form 12.902(c) provides: "If you have any **POSSIBLE assets** (income potential, accrued vacation or sick leave, bonus, inheritance, etc.) or **POSSIBLE liabilities** (possible lawsuits, future unpaid taxes, contingent tax liabilities, debts assumed by another), you must list them here." Fla. Fam. L. R. P. Form 12.902(c).

Before the final hearing, the former husband made the first equitable distribution payment to the former wife on or about October 2, 2017, which was just days after the mediation. The amount deposited was approximately $400 less than what the former wife expected to receive. The former wife's counsel contacted the former husband's counsel and inquired about the discrepancy.[4] It was during this exchange the former wife learned for the first time the former husband was determined to be seventy percent disabled and awarded disability benefits by the U.S. Veterans Administration Department (VA).

The former wife moved to set aside the MSA under rule 12.540(b) and sought a continuance of the final hearing based upon theories of "newly discovered evidence" and "fraud," arguing the former husband failed to disclose his disability status

---

[4]Former husband's counsel wrote in an email to former wife's counsel:

> I have, however, now conferred with my client and he reports that he has fully complied with the MSA and did, in fact, send your client 34.43% of his net pension payment which amounts to the $1,199.94 he sent. . . . Once your client begins getting her check directly from DFAS, they will not withhold taxes from her share, as I understand it, and she will get her full 34.43% of his non-disability pension thereafter, though even that won't be what she expects inasmuch as *my client has been determined to be approximately 70% disabled now (since our mediation)* so your client cannot get any share of the disability portion and will get her 34.43% share from the remaining 30% of his pension which is not disability pay. . . .

(Emphasis added.) After the filing of the motion, the former wife sought discovery of the VA disability benefits records from the former husband, who objected. The former wife later obtained these records from the VA, which revealed two determination letters from the VA concerning his disability status and benefit award, as well as payment of his first disability benefit also dated days before the mediation.

and VA disability benefits. The trial court granted the former wife's motion to continue the final hearing allowing a limited period to conduct discovery on the newly discovered VA disability benefits. At the evidentiary hearing on the motion to set aside the MSA, the former husband testified the former wife was aware he was filing an application for VA disability benefits[5] but conceded the former wife could not have known of his seventy percent disabled status and the VA disability benefit award and payment because these facts were also new to him. He claimed he only learned of the award and payment after the former wife questioned the first MSA payment.

At the evidentiary hearing, during opening statements and before any evidence was introduced, the trial court commented that he was not finding any fraud or misrepresentation by the former husband. Similar comments were made by the trial court during the hearing. After the close of the evidence, the trial court made an oral ruling concluding there was no fraud or misrepresentation by the former husband. Instead of pronouncing findings in support, the trial court stated it was relying upon its earlier findings of no fraud or misrepresentation—the comments made by the trial court during the opening statements.

II

The former wife argues the former husband failed to disclose his "income potential" by omitting the VA disability benefit income from his financial affidavit. The

---

[5]The former wife denied knowing the former husband was filing an application for VA disability benefits. We do not reach the issue whether the former wife knew the former husband was filing an application for VA disability benefits, as this issue will need to be addressed by the trial court upon remand following an evidentiary hearing on the merits of the former wife's motion.

facts here establish that the former husband applied for VA disability benefits, listing his former wife as a dependent, following the filing of his petition for dissolution. His financial affidavit was filed nine days later and did not include any mention of his application for VA disability benefits. The former husband did not amend his financial affidavit after he learned of the VA disability benefit award.

In response, the former husband argues the VA disability benefits are irrelevant to the only issue the parties had pending at the trial level, namely, equitable distribution. He contends because disability payments are exempt from inclusion as marital property, the discovery of his disability award should not matter, even if he intentionally failed to disclose same to former wife. This argument is disingenuous.

Pursuant to rule 12.285(f) (Duty to Supplement Disclosure; Amended Financial Affidavit):

> (1) Parties have a **continuing duty** to supplement documents described in this rule, including financial affidavits, whenever a material change in their financial status occurs.

> (2) If an amended financial affidavit or an amendment to a financial affidavit is filed, the amending party must also serve any subsequently discovered or acquired documents supporting the amendments to the financial affidavit.

(Emphasis added.) Under this rule, the former husband had a continuing duty to supplement his financial affidavit to include the VA disability benefit income, as such constitutes a material change in his financial status.

The filing of a financial affidavit pursuant to rule 12.285 in dissolution proceedings is mandatory, and the rule so states in its title—"Mandatory Disclosure." See Fla. Fam. L. R. P. 12.285(d)(1). The importance of a financial affidavit in

dissolution proceedings was best discussed in Daniel v. Daniel, 922 So. 2d 1041, 1045 (Fla. 4th DCA 2006). In Daniel, the husband refused to file a financial affidavit in a non-simplified dissolution proceeding asserting his right to privacy under article I, section 23 of the Florida Constitution. In holding the husband's right of privacy was not implicated, the court reasoned:

> A financial affidavit is central to the job of a court trying to do justice in a divorce case. The property divisions made and obligations imposed by a final decree turn on the financial condition of the parties. A court cannot do the right thing without sufficient information about the parties' finances.
>
> It is not unusual for a settled family case to reappear before the court on the claim that the settlement was procured by fraud. The special treatment reserved for post-dissolution fraud claims demonstrates the importance of the financial affidavit to the family law process. . . . While evidence of a person's financial condition may be drawn from a multitude of documents, a financial affidavit is a party's formal, sworn position that reduces finances to a manageable chunk of information. The affidavit becomes "ground zero" for any request for post-judgment relief that comes before the court.
>
> A financial affidavit is filed for the benefit of the court and the opposing party in the dissolution. Decisions on whether and how to settle a case depend on full, honest financial disclosure. The financial affidavit is at the center of the system established by the Family Law Rules to resolve the issues that arise in family cases.

Id. at 1045.

The former husband correctly argues his VA disability benefits are not a marital asset subject to equitable distribution. However, while a spouse would not be entitled to a share of the VA disability benefits, these benefits are nonetheless a source of income appropriate for consideration in a dissolution proceeding. See Naples v. Naples, 967 So. 2d 944, 943, 947 (Fla. 2d DCA 2007) (determining the Uniformed

Services Former Spouses' Protection Act did not preclude husband from paying alimony merely because he received military disability benefits which were exempt from equitable distribution); see also Smith v. Smith, 737 So. 2d 641, 642 (Fla. 1st DCA 1999) ("In a dissolution of marriage proceeding, each party's sources of income and ability to pay are factors to be considered in determining whether alimony, child support, or attorney's fees are appropriate, and if so, in what amounts."); Day v. Day, 574 So. 2d 324, 324 (Fla. 4th DCA 1991) (holding court may consider disability benefits when considering husband's ability to comply with purge provision of contempt order).


III

We next address the former wife's contention she was deprived of an evidentiary hearing on the merits of her fraud claims when the trial court announced during opening statements, prior to presentation of any testimony or other evidence, it would not be making a finding of fraud or misrepresentation. We agree.

Preliminarily, the former wife filed an amended motion prior to the evidentiary hearing. The former husband argues the amended motion did not allege the fraud theory and, thus, the former wife should be precluded from challenging the MSA based upon fraud. While we agree the fraud theory was absent from the amended motion, the case tried before the trial court at the evidentiary hearing included theories of *both* newly discovered evidence and fraud. There being no objection or no complained error by the trial court to this evidence, the fraud theory was therefore tried by implied consent. See Fla. R. Civ. P. 1.190(b); Hemraj v. Hemraj, 620 So. 2d 1300, 1301 (Fla. 4th DCA 1993) (holding unpleaded alimony issue was tried by implied

consent where wife included issue in pretrial statement and argued same in opening and closing arguments without any objection by the husband); Smith v. Landy, 402 So. 2d 441, 441 (Fla. 3d DCA 1981) (holding estoppel case tried with implicit consent of the parties where issue was supported by the evidence and formed the basis of the judgment, notwithstanding mortgagor's failure to plead estoppel).  As further support of consent here, the trial court at the conclusion of the hearing made findings on the presented fraud theory.

Florida law permits a party to challenge a marital settlement agreement based upon certain limited circumstances.  See Casto v. Casto, 508 So. 2d 330, 333 (Fla. 1987) (discussing grounds upon which a party may set aside or modify a postnuptial agreement based upon fraud, where the challenging spouse establishes that the agreement "makes an unfair or unreasonable provision for that spouse, given the circumstances of the parties"); accord Macar v. Macar, 803 So. 2d 707, 712-13 (Fla. 2001) (holding the Casto line of cases have no application where the parties are involved in a contested divorce and have had the opportunity to full discovery); Crupi v. Crupi, 784 So. 2d 611, 614 (Fla. 5th DCA 2001) (holding mediated settlement agreement could not be set aside based upon fraud where wife was aware of the inaccuracies in the husband's affidavit).  A party seeking relief from a marital settlement agreement based upon fraud is entitled to be heard on the merits of his or her motion. Marjon v. Lane, 995 So. 2d 1086, 1087-88 (remanding case for an evidentiary hearing); see also Hinson v. Hinson, 985 So. 2d 1120, 1121 (Fla. 3d DCA 2008) ("Where a motion for relief from judgment alleges 'colorable entitlement to relief,' it should not be summarily dismissed without an evidentiary hearing.").  The former wife's motion

addresses these issues. Because we are remanding this case for a new evidentiary hearing on the merits of the former wife's motion, we make no comment as to the merits of the arguments raised.

Florida courts have consistently found error where a trial court prejudges a case. See Van Hoven v. Burk, 71 So. 2d 158, 158 (Fla. 1954) (holding trial court erred by directing a verdict for one party or another or ruling on a claim after an opening statement but before presentation of the evidence or testimony); Kates v. Seidenman, 881 So. 2d 56, 58 (Fla. 4th DCA 2004) ("While a trial judge may form mental impressions and opinions during the course of hearing evidence in a case, the judge is not permitted to pre-judge the case."); Perez v. State, 771 So. 2d 1285, 1285 (Fla. 3d DCA 2000) (finding statements made by trial court judge provided a "well founded fear" the defendant would not receive an unbiased hearing); Gonzalez v. Goldstein, 633 So. 2d 1183, 1184 (Fla. 4th DCA 1994) (determining trial judge's announced intention before a scheduled hearing to make a specific ruling, regardless of any evidence or argument to the contrary, is indicative of judicial bias and prejudice); Wilfork v. Associated Grocers of Fla., Inc., 343 So. 2d 84, 85-86 (Fla. 3d DCA 1977) (finding trial court erred in directing verdict against plaintiff after her opening statement without allowing presentation of case); see also Trans Health Mgmt. Inc. v. Nunziata, 159 So. 3d 850, 862 (Fla. 2d DCA 2014) ("Trial judges must be fair, impartial, and disinterested participants in the proceedings."); Lee v. State, 264 So. 3d 225, 226 (Fla. 1st DCA 2018) (noting judges should not only be impartial, but should also leave the impression of impartiality upon all those who appear in court). In this case, the trial court's premature findings before receiving any evidence were tantamount to a judgment on the

pleadings and summary denial of the former wife's claims. The former wife was deprived her entitled evidentiary hearing and, most importantly, due process and her day in court.

IV

The former wife also argues the trial court erred in finding the VA disability benefits were not "newly discovered evidence" under rule 12.540(b). Rule 12.540(b) allows a trial court to relieve a party from a final judgment on grounds of newly discovered evidence, which by due diligence could not have been discovered in time to move for a new trial or rehearing. The rule is derived from Florida Rule of Civil Procedure 1.540 and the same standards apply in family law proceedings, except there is no time limit in rule 12.540 for motions based on fraudulent financial affidavits in marital or paternity cases. See Anderson v. Anderson, 845 So. 2d 870, 870-71 n.1 (Fla. 2003). The rule contemplates the motion being filed *after* a final judgment giving a party relief from judgment where a party was denied the benefit of certain evidence despite the party's due diligence. See Fla. Dep't of Revenue v. Edden, 761 So. 2d 436, 437-38 (Fla. 3d DCA 2000) (involving father who sought to set aside paternity judgment based upon newly discovered evidence the child's mother had sexual relations with another person during the same period he had sexual relations with the mother); Wiley v. Wiley, 546 So. 2d 1149, 1150 (Fla. 4th DCA 1989) (discussing former husband who filed timely motion for relief from judgment of contempt for failure to pay child support based on alleged newly discovered evidence in the hands of the former husband's attorney). Consequently, the rule has no application here where the trial court afforded the former

wife a continuance of the final hearing so that she could conduct additional discovery on the newly discovered VA disability benefit evidence prior to the final hearing and in support of her motion to set aside the MSA.

Notwithstanding, because we find the facts tried before the trial court based upon the newly discovered evidence grounds are inextricably intertwined with the fraud and misrepresentation claims, we reverse the trial court's decision on the newly discovered evidence for the same reasoning above that the former wife was deprived a hearing on the merits of her motion. Accordingly, we affirm the final judgment insofar as it dissolves the parties' marriage. We reverse the remainder of the final judgment and remand this case for a new evidentiary hearing on the issues of fraud and misrepresentation. On remand the trial court may grant the former wife leave to amend the motion to set aside the MSA in order to limit the claims to fraud and misrepresentation.

Reversed in part, affirmed in part, and remanded with instructions.


CASANUEVA and VILLANTI, JJ., Concur.

- 12 -